59  43
182 167
59   43
†219 ²241

## Linn *et al. versus* Alexander.

1. Devise to Matthew and Samuel, "and the heirs of their bodies," charged with keeping their mother for life and with certain legacies. "Matthew and Samuel have no privilege, nor can in nowise sell or dispose of the land during their mother's natural life, and then not without both be agreed to sell their parts, * * but if either one of them dies wanting heirs of the body, the part that one owns falls to the other then except he be married, and if both die before they marry, their estate is to be equally divided amongst all the legatees." Matthew and Samuel took an estate tail.

2. "Heirs of the body" are strictly and technically words of limitation, and can be converted into words of purchase only by a clearly-expressed intention of the testator.

3. An estate tail may be followed by a limitation over on a definite failure of issue, and like a fee, may depend for its continuance on the performance of a condition or the happening of a contingency: but when once created it remains an estate tail until the happening of the contingency or the breach of the condition.

4. Either a contingent remainder or an executory devise limited after an estate tail, is cut off by a deed, under the act of January 16th 1799, to bar the tail.

May 13th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Franklin county :* Of May Term 1868.

This was an action of ejectment, brought October 19th 1867, by William T. Linn, Ephraim Keefer and Margaret his wife, Samuel Holliday, James Holliday and Margaret Alexander against Randal Alexander.

A case was stated for the opinion of the court embodying the following facts :—

Samuel Coulter, Sr., died seised of the land in question, having made his will, proved May 9th 1794, leaving a widow Margaret, seven children, James, Eleanor, Elizabeth, Samuel, Matthew, Margaret and Margery and a grandson, Samuel Ardney. By his will he gave to his wife certain personal estate, and provided for her support during life, or until her marriage. He gave to his children, James Coulter, Eleanor Ardney, Elizabeth Holliday, Margaret and Margery and his grandson Samuel Ardney pecuniary legacies, to be paid out of his estate; he also gave to his children various chattels. He devised to his sons Samuel and Matthew as follows :—" Item. I give and devise to my son Samuel Coulter and my son Matthew Coulter and the heirs of their bodies all the plantation with all the appurtenances thereto that I now live on, and all the horses, horned cattle, sheep, hogs, except what are above given to the legatees, likewise one wagon and all the other farming utensils that I now have, all the grain of every kind, and hay and all my body clothes all to be theirs, and all the house and kitchen furniture, each of them my two

[Linn *v.* Alexander.]

sons Samuel and Matthew to have an equal share in above what is mentioned, but they are to keep their mother and her horse as above mentioned until the end of her natural life or marriage, and then after she marries and the legatees all paid off, they are to divide her share as above described to her, and further they are to support their two young sisters with sufficient boarding and lodging, and to live with their mother in the old mansion-house till they come of age or marry. My two sons Samuel and Matthew have no privilege, nor can in nowise sell or dispose of the land during their mother's natural life or marriage, and then not without both be agreed to sell their parts, the above legatees and what shall be hereafter mentioned are all to be paid out of the estate. I leave my two sons Samuel and Matthew only 60 pounds I have in cash. I leave to their two young sisters as will be hereafter mentioned. I give my large Bible to my son Samuel, and my saddle to my son Matthew; but if either one of them dies wanting heirs of the body, the part that one owns fall to the other then except he be married, and if both dies before they marry, their estate to be equally divided among all the legatees."

The land in controversy is that contained in the foregoing devise, all the legacies under the will have been paid.

On the 2d of November 1854, Samuel and Matthew Coulter conveyed the land to William Johnson for the purpose of barring their estate-tail, and the deed was duly acknowledged according to the Act of Assembly. On the 16th of December following Johnson reconveyed the land to Samuel and Matthew Coulter. On the 15th of February 1855 they conveyed the land to Johnson in fee to be held by him, "to the only proper use and behoof of the said Samuel and Matthew during their joint lives, and to the use of the survivor of said Samuel and Matthew and the heirs and assigns of such survivor for ever, with the right of said Samuel and Matthew their heirs and assigns to occupy said premises and lease the same, and the rents and profits thereof, to receive and dispose of as they may think proper, the said survivor of said Samuel and Matthew to be seised in fee of the absolute and entire estate in said premises." Samuel died about the 9th of November 1859 intestate, unmarried and without issue, leaving Matthew to survive him. Matthew died about the 1st of March 1867, unmarried and without issue. By his will, dated April 6th 1865, and proved March 9th 1867, he devised the premises in question to Robert Coulter, Samuel Coulter, Margaret G. Coulter and Sarah T. Coulter; and he devised other land to Samuel Holliday, one of the plaintiffs, who accepted the devise. William T. Linn, Margaret Keefer, Samual Holliday, James Holliday and Margaret Alexander, are respectively children and heirs at law of Margery Coulter and Elizabeth Holliday, who were children and legatees of Samuel Coulter, Sr., deceased. Robert Coulter,

[Linn v. Alexander.]

Samuel Coulter, Margaret E. Coulter and Sarah T. Coulter are heirs-at-law of James Coulter, a son and legatee of Samuel Coulter, Sr., deceased. The defendant is tenant under the devisees of Matthew Coulter.

It was agreed that if the court should be of the opinion that the plaintiffs are entitled to recover, then judgment to be entered in their favor for the undivided one-half of the land in dispute; but if not, then judgment to be entered for the defendant.

The court (King, P. J.) entered judgment for the defendant, which the plaintiffs assigned for error, on a writ of error taken by them.

*J. M. Linn* and *J. McD. Sharpe,* for plaintiffs in error.—The limitation over after the estate to Matthew and Samuel was good as an executory devise, though bad as a remainder: 1 Jarman on Wills 667; 2 Preston on Abstracts of Title 139; Fearne on Rem. 395–397; 1 Preston on Est. 480; Griffith v. Woodward, 1 Yeates 316; 7 Bac. Abr. 297; 4 Kent's Com. 269, 270; Haner v. Shutz, 2 Binn. 532; s. c. 3 Yeates 221; Jessup v. Smuck, 4 Harris 327; Langley v. Heald, 7 W. & S. 98; Pells v. Brown, Cro. Jac. 590; Roe v. Jeffry, 7 Term Rep. 596; Heynd v. Lyon, 5 Bac. Ab. 777. Where there are expressions showing that by "issue" the testator meant children, "issue" will be construed a word of purchase: Powell v. Board of Missions, 13 Wright 46; Guthrie's Appeal, 1 Wright 9; Sheetz's Estate, 2 P. F. Smith 257; Curtis v. Longstreth, 8 Wright 297; Hayes on Dispositions of Real Estate 40, 41, *et seq.*; Smith on Executory Interests, ch. 17, § 1; Hagerty v. Albright, 2 P. F. Smith 274; Reihle's Appeal, 4 Id. 97; Vaughan v. Dickes, 8 Harris 513; Matlack v. Roberts, 4 P. F. Smith 248; Eichelberger v. Barnitz, 9 Watts 450.

*F. M. Kimmell,* for defendant in error; from whom the reporter received no paper book.

The opinion of the court was delivered, May 27th 1868, by

STRONG, J.—If under the will of their father, Samuel Coulter, Jr., and Matthew Coulter took a fee tail in the land devised to them, confessedly the plaintiffs are not entitled to judgment upon the case stated. We think such was the estate given to them. The words of the will are these: "I give and devise to my son Samuel Coulter, and my son Matthew Coulter, and the heirs of their bodies, all the plantation with all the appurtenances thereto, that I now live on." Had the testator stopped here, no question could have been raised. The devise thus far is in the most apt words for the creation of an estate tail. But this clause is followed by a gift to the same sons of certain personal property, and the imposition of certain charges. The will then proceeds as fol-

[Linn *v.* Alexander.]

lows : " My two sons Samuel and Matthew have no privilege, nor
can in nowise sell or dispose of the land during their mother's
natural life or marriage, and then not without both be agreed to
sell their parts ;" * * * " but if either one of them dies wanting
heirs of the body, the part that the one owns falls to the other
then except he be married, and if both die before they marry,
their estate is to be equally divided amongst all the legatees."
This it is argued reduces the estates tail first given to estates for
life in the first takers. We are however unable to see that any
such effect is produced by these added directions. The words
" heirs of the body" are strictly and technically words of limita-
tion. Nothing can convert them into words of purchase, but a
clearly-expressed intention of the testator to use them in an ab-
normal sense. There is no such intention expressed in this will.
It is very inartificially drawn, having been doubtless the work of
a most illiterate scrivener, but there is not an intimation that the
testator used the word " heirs" as meaning children. The first
takers were clearly intended to be the root of the succession.
There is indeed an ultimate limitation to " the other legatees" of
the testator, to take effect in the contingency that both sons should
die without having married, and in the settlement of the cross-
remainders devised on the death of each son there is an exception
that such remainder shall not pass, if the deceased son be married,
but how this can reduce the estate first given clearly in tail, into
an estate for life I cannot perceive. The fact that the second and
third limitations must take effect, if at all, at the death of the first
takers, though it may be of importance in considering whether the
ultimate gift is a remainder, or an executory devise, and if the
latter, whether it is good as an executory devise or not, can have
no effect upon the degree of the estate first given. An estate tail
may be followed by a limitation over on a definite failure of issue.
So, like an estate in fee, it may depend for its continuance on the
performance of a condition, or may be defeated by the happening
of a contingency, but when once created, it remains an estate tail,
until the occurrence of the contingency, or until the condition is
broken upon which its continuance was made to depend. This is
well illustrated in Fountain *v.* Gooch, cited by Lord Mansfield in
Driver, ex d. *v.* Edgar, Cowp. 379, where a testator devised
lands to his son for life, and to the heirs male of his body begotten,
and for want of such issue the said son to have the said estate
but during his natural life and no longer ; and then the testator's
will was that the land should descend to his nephew. The son
suffered a common recovery to the use of himself and his heirs,
and devised the land and died without issue male. It was adjudged
that his estate was at first an estate tail, and consequently that
the remainder was barred by the recovery, notwithstanding that
the gift was to the son during his life and no longer, in case he

[Linn v. Alexander.]

had no issue male of his body, which, it was objected, rendered the estate tail contingent on his having male issue, and that, he dying without issue male, it had become but an estate for life *ab initio*.

The estate then given by the testator to his sons Samuel and Matthew cannot be regarded as merely an estate for life. Equally clear is it that it was not a conditional fee. There are no words to make it such. On the contrary, the gift was to them and the heirs of their bodies, with cross-remainders. Nothing in the words "if one of them dies wanting heirs of the body, the part that one owns falls to the other then *except he be married*" can enlarge the estate first given into a fee. The exception defeats the cross-remainder in the contingency stated; it can have no other effect. And if it could affect the estate first given to the son so dying, it could only be by converting, in case of his marriage, a defeasible fee tail into a fee tail indefeasible. The plaintiff in error has labored earnestly to prove that the ultimate limitation to "the other legatees" is an executory devise, and not a contingent remainder. From this it is inferred that it was not destroyed by the deed of Samuel and Matthew Coulter dated November 2d 1854 made for the purpose of barring the estate tail. Neither the premises nor the inference can be conceded. That the ultimate limitation must take effect as a remainder rather than as an executory devise if it can, is a plain rule. Now the estate given to "the other legatees" commences with an event which is in itself a regular determination of the estate tail, to wit, the death of the tenants in tail, without marriage, and of course without leaving issue then living. The two estates are therefore immediately connected, the latter dependent on the former. And as the ulterior limitation does not in any degree abridge or interfere with the estates tail, or accelerate their determination, it may well be considered a remainder; not vested indeed, because dependent upon the event of the estates tail determining by the decease of the tenants in tail, leaving no issue living (they not having been married), but contingent on the expiration of the estates tail by that event.

It is not essential to this case, however, to determine whether the final devise to "the other legatees" was a contingent remainder or an executory devise, for in either aspect it was cut off by the deed of November 2d 1854. Under our Act of Assembly of January 16th 1799, such a deed has the effect of a common recovery. Now, though a common recovery suffered by a tenant in fee does not bar executory devises and conditional limitations, the rule is different with a common recovery suffered by a tenant in tail: 1 Preston's Abstracts of Title 400. Mr. Fearne lays down the principle thus: Fearne on Remainders 423–4: "Though in general, an executory devise, even of lands of inheritance, cannot

[Linn *v.* Alexander.]

be barred by the first taker, yet we are to observe, that where in lands of inheritance an estate tail is first limited, and then an executory or conditional limitation is made upon that estate, a recovery suffered by the tenant in tail before the event or condition happens, on which the ulterior limitation was to arise, will bar the estate depending on that event or condition." For this he cites cases which sustain the doctrine in every conceivable aspect. Thus, Page *v.* Hayward, 2 Salk. 570, was a case where the testator devised to A. and the heirs male of her body, upon condition and provided she married one Searl, and had issue male by him, and in default of both conditions, he devised to E. She married one Cliff, and with him levied a fine and suffered a recovery of the lands. It was adjudged that she took an estate tail special, that her estate did not cease by her marrying another than Searl, for she might survive her husband, and afterward marry Searl, and (which is the material thing now) that if the estate had been to A. and the heirs of her body by Searl begotten, provided and upon condition that if she marry any but Searl, it should be and remain to another, a common recovery suffered before marriage would bar the estate tail and remainders, and her subsequent marriage with another would not have avoided the recovery.

So (1 Mod. 111), a gift to one in tail determinable on his non-payment of 100*l.*, remainder to B. in tail, first tenant in tail suffers a common recovery before the day of payment, and afterwards fails in the payment, yet because he was tenant in tail when he suffered the recovery, all is barred; Mr. Fearne adds: "So if a tenant in tail be with a limitation so long as such a tree shall stand, a common recovery will bar that limitation." Driver *v.* Edgar, above referred to, is a significant case. There lands were devised to Eve and to the heirs of her body lawfully begotten, but in case she should happen to die single, married or widow, without leaving children or child living at her decease, lawfully begotten, then the estate given her should be void as to the inheritance of heirs, and of none effect, and the lands should go to the testator's heir male. Eve died unmarried, having suffered a common recovery. It was contended that she was tenant for life only, but it was ruled that she was a tenant in tail, and that the recovery barred the ulterior limitations. These cases have a direct bearing upon the case before us. They establish that the estates given to the two sons, Samuel and Matthew Coulter, were estates tail and not estates for life, or conditional fees, and they are conclusive to the effect that the deed of November 2d 1854, equivalent to a common recovery, converted those estates into fees simple absolute. The plaintiffs then are not entitled to recover.

Judgment affirmed.