SILAS GIDDINGS AND WIFE v. BENJAMIN G. COX.

*Husband and wife.  Statute.  Tenancy by the curtesy.*

The 74th section of the act of November 15, 1821,* Slade's Comp. 348, was by implication repealed by the act of October 31, 1823,† Slade's Comp. 358; and after the passage of the latter act, a husband did not become tenant by the curtesy of the land of his deceased wife, held by her in fee tail.

A statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, will operate as a repeal of the former statute, although it contains no express words to that effect.

EJECTMENT for lot number six in the seventh range of the first division of lands in the town of Mount Tabor, drawn to the original right of Daniel Harris. Plea, the general issue, and trial by the court, at the September Term, 1858,—ALDIS, J., presiding.

It appeared from the testimony of the plaintiff, that Daniel Harris was one of the original proprietors of the town of Harwich, now Mount Tabor, and that the town was divided among the proprietors, and the land in suit was set to his proprietary right; that he by his will devised his right of land in the town to his " daughter Elizabeth Harris, and the lawful heirs of her body;" that she was married to Christopher Bates, and by him had a daughter, Rachel Bates, who is one of the plaintiffs, and the wife of Silas Giddings, the other plaintiff. It also appeared that Elizabeth Bates (whose maiden name was Elizabeth Harris) died on the 24th day of February, A. D. 1853, being more than fifteen years before this suit was brought; and that her husband, Christopher Bates, died on the 24th of May, 1836, being less than fifteen years before this suit was brought. It was admitted that the defendant was in possession of the land in question.

On the part of the defendant there was testimony tending to show, and the court so found, that the defendant and those under

* NOTE. This act provided, " that the husband of any woman, who shall die leaving issue by such husband, shall have and hold the real estate of such woman, as tenant by the curtesy, etc."

† NOTE. This act provided " that when any man and his wife shall be seized of any real estate, in her right, *in fee simple* and issue shall be born alive of the body of the wife, that may or might inherit the same, and the wife die, the husband shall have and hold such estate during his life, as tenant by the curtesy, etc.

whom he claimed, were in actual adverse possession of the land in suit prior to the decease of Elizabeth Bates, on the 24th of February, 1833, and have ever since held possession thereof, claiming it in their own right.

The plaintiffs insisted that Christopher Bates had an estate by the curtesy in the land sued for, and that the statute of limitations would begin to run only upon his decease, viz: from May 24, 1836; and therefore that the defendant had not acquired a title by fifteen years of adverse possession.

The defendant insisted that Christopher Bates had no estate by the curtesy in the land, and that the adverse possession began with the decease of the wife, February 24, 1833, and had ripened into a title before the commencement of this suit.

The county court rendered judgment for the defendant, to which the plaintiff excepted.

—— ———, for the plaintiff.

*Edgerton & Hodges* and *M. H. Cook*, for the defendant, cited 1 Black. Com. 89; *Church* v. *Crocker*, 3 Mass. 21; *Bartlett* v. *King*, 12 Mass. 537; *Isham* v. *Bennington Iron Co.*, 19 Vt. 230; *Stephen* v. *Smith*, 29 Vt. 160; *Brown* v. *McMillan*, 7 M. & W. 196.

BENNETT, J. This is an action of ejectment for lot number six in the seventh range, first division, drawn to the right of Daniel Harris, and situated in Mount Tabor.

Daniel Harris' daughter Elizabeth, by the devise of her father, held the title to this lot in *fee tail*, that is, to herself and the heirs of her body lawfully begotten. She married Christopher Bates, and had by him issue, a daughter, who married Silas Giddings, who with his wife brings this suit. The daughter of Daniel Harris, Mrs. Bates, died on the 24th of February, 1833, and her husband, Christopher Bates, survived her until the 24th of May, 1836.

The defendant's title by *adverse possession* was made to depend upon the question whether the statute began to run against the granddaughter of Daniel Harris at the time of her mother's

609

death in 1833, or not until her father's death in 1836; and that will depend upon the question whether her father was tenant by the curtesy or not.

There is nothing in the case to show whether the _granddaughter_, _Mrs. Giddings_, was a minor or a _feme covert_ at the time of her mother's death, in 1833, and of course we can not on this bill of exceptions assume either.

Under the 74th section of the act of 1821 (Slade's Comp. p. 348), it would be clear that Bates would have held a life estate in the lands in question, as a tenant by the curtesy. That statute does not confine the right of the husband to hold the lands of the wife as tenant by the curtesy, to cases where she was seized in fee simple, but would include estates whereof she was seized in fee tail. But in 1823 (p. 359 Slade's Comp.) a new provision was made in relation to this subject. That act provided that when any man and his wife shall be seized in _fee simple_ in her right, and issue shall be born alive of the body of such wife that could inherit the same, and the wife dies, the husband has a life estate as tenant by the curtesy.

The question is, what should be the effect of the act of 1823 upon the act of 1821? Does it supersede that act?

We think it is safe to say, "that a subsequent statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, must operate to repeal the former, although it contains no words to that effect." This is common sense, and we think it is according to the adjudged cases, not only in this State, but in other States, as well as in England.

This principle was applied by this court to the act of 1843, which declared all general assignments _void_ as against creditors.

The act of 1852, regulating assignments, was held by implication to repeal the act of 1843; _Farr_ v. _Brackett and Tr._, 30 Vt. 344.

The act of 1823 is a revisal of the entire subject, as to the right of the husband to hold lands as tenant by the curtesy, and was no doubt designed as a substitute for the act of 1821. Unless it has that effect it was of no use.

Judgment affirmed.