OPHIR HAYNES, 2D, AND ANGIE E. HAYNES *v.* WINSLOW BOURN.

*Tenant by the Curtesy. Fee-simple. Husband and Wife. Statutes.*

The statute of 1823, which is still in force, in express terms confines the right of the husband to hold the real estate of the wife as tenant by the curtesy to cases where they were seized in her right in fee-simple.

Where the granting part of a deed was "unto the said Almena and heirs of her body forever," *habendum* "to the said Almena and heirs aforesaid, their heirs and assigns to her and their own use and behoof forever," it was *held* that the deed did not give Almena an estate in fee-simple, therefore her husband could not hold as tenant by the curtesy.

Whether the husband is entitled to hold as tenant by the curtesy or not must be determined by the estate of which the husband and wife were seized in her right in her life time, not upon the estate which "the heirs of her body" would take by descent to them at her decease.

THIS is an action of ejectment for certain lands in Jamaica, and was submitted to the court upon the following agreed statement of facts:

"The plaintiffs are husband and wife. The defendant was the husband of Almena Bourn, formerly Almena Ingram, daughter of Samuel Ingram. The wife plaintiff is the daughter of the defendant and said Almena, who were the parents of five other children all now living. The demanded premises were deeded by said Samuel Ingram to said Almena, while she was the wife of the defendant, by deed, dated February 24, 1832, which is made a part hereof, and of which the paper annexed is a true copy. After said deed the defendant and said Almena went into possession of the premises and she became seized thereof, and this seizin and possession continued until the said Almena died, which was on the day of , 186 . The defendant has been in possession of the premises ever since the death of said Almena, and claims to be entitled to the possession of the whole thereof."

The following is an abstract of the deed from Samuel Ingram to Almena Bourn:

"Know all men by these presents, that I, Samuel Ingram, of Newfane, in Windham county, State of Vermont, for the consideration of the love and affection and other good causes me moving, I have to my daughter Almena, of Jamaica, in Windham county, and State of Vermont, given, granted, bargained and sold, and hereby do freely give, grant, bargain, sell and consign unto said Almena, and heirs of her body forever, a certain piece of land in Jamaica, in said county, described, etc., (description covers the same land declared for.) To have and to hold said granted premises with all the privileges and appurtenances thereof, to the said Almena and heirs aforesaid, their heirs and assigns, to her and their own use and behoof forever. Then follows the usual covenants of warranty. Dated February 24, 1832. Acknowledged same day. Recorded September 5, 1832."

Upon the foregoing statement of facts, the court, September term, 1869, BARRETT, J., presiding, rendered judgment for the defendant *pro forma*, to which the plaintiff excepted.

*Charles N. Davenport,* for the plaintiff.

This deed creates what would be, by the common law and the statute *de donis*, an estate tail. By our statute of 1839, a life estate in Almena, and upon her decease, a fee-simple in the heirs of her body. "Unto the said Almena and heirs of her body forever," are the precise words necessary to create that estate. 2 Black. Com., 114; 2 Preston on Est., 481, *et seq.*; 1 Wash. R. P., 73, 75; Reeves' Dom. Rel., 455; *Giddings et al.* v. *Smith et al.*, 15 Vt., 344.

The *habendum* is entirely consistent with the granting clause "The said Almena and heirs aforesaid," means the heirs previously mentioned, that is "heirs of her body." "Their heirs and assigns" means the heirs and assigns of the "heirs of her body." Wash. on R. P., 74. Where the words "heirs of the body" are used in a deed they are not to be controlled by any subsequent expression. There is in this case no repugnancy between the different clauses of this deed. If there were, the latter clause would have to yield to the former. Shephard's Touchstone, 88, ch. 5; 2 Wash. R. P., 642. The intent of the grantor to create an es-

tate tail is manifested clearly in the deed. This intent should be carried into effect. 2 Wash. R. P., 628; *State* v. *Trask*, 6 Vt., 355; *Flagg* v. *Eames*, 40 Vt., 16.

Assuming that this deed creates an estate tail in Almena, is her husband entitled to curtesy? At common law, dower and curtesy were incidents of a fee-tail estate. 2 Black., 116; 2 Wash., R. P., 80.

But such is not the law of Vermont, and has not been since 1823. A husband is not entitled to curtesy, unless he and his wife shall be seized "in her right in fee-simple." Slade's Sts., 355; Gen. Sts., 414, § 15; *Giddings et ux.* v. *Cox*, 31 Vt., 607.

*Waterman & Read*, for the defendant.

The deed from Samuel Ingram to Almena Bourn conveyed to her an estate in fee-simple *absolute*. The words "unto the said Almena and heirs of her body forever" in the premises are enlarged by the words "to the said Almena and heirs aforesaid, their heirs and assigns, to her and their own use and behoof forever." 4 Cruise's Dig., 229, § 87; Co. Lit., 299 *a*. If she did not take a fee-simple absolute, she took a fee-simple conditional with a fee-simple absolute expectant, at her decease. Co. Lit., 21, a.; 4 Cruise's Dig., 229, § 89; *Flagg, administrator* v. *Eames*, 40 Vt., 16. If the deed is construed in either of these ways the defendant is tenant by the curtesy. Gen. St., 414, § 15. Almena and the defendant were seized in fee-simple during her life; when the estate became a fee-simple absolute at her decease, it was by relation back to the original grant. *Ford* v. *Flint and wife*, 40 Vt., 382.

Tenancy by the curtesy grows out of the descent of the estate from the wife to her heirs, and depends entirely upon the estate that passes to the heirs. Co. Lit., 29, a & b.; 1 Gr. Cruise's Dig., 159; Gen. Sts., 414, § 15. The heirs of Almena Bourn take by descent from her, and not as purchasers from Ingram. Her estate was a fee-simple in expectancy, and it became a fee-simple absolute in them at her decease, because her estate had then become a fee-simple absolute and had descended to them. Roper on Husband and Wife, 16. The estate of the heirs does not depend on

the statute of 1839. That statute creates a fee-simple in the person to whom the estate tail would next pass according to the common law, but here no estate tail passes. The heirs take a fee-simple without any aid from the statute (subject to their father's right to curtesy). This is within the letter and spirit of the statute giving curtesy.

If it was an estate tail merely, he would be entitled to his tenancy by the curtesy. The term "fee-simple" as used in the statute is a generic term intended to include all estates of fee-simple. Estates tail are estates of fee-simple in which the husband was entitled to curtesy by the common law. The statute is in affirmance of the common law. Littleton, § 1 ; Co. Lit., a. & b.; 1 Gr. Cruise's Dig., 156.

It is claimed by the defendant in *Brown* v. *Pierpoint*, now pending in the supreme court, heard at the general term, 1868, that by the force of our statutes of devises and descents, estates tail go to the heirs generally, and become in effect fee-simple estates, on the authority of *Jewell* v. *Warner*, 35 N. H., 176, and *Newton* v. *Griffith*, 1 Har. & Gill, 111. If that doctrine prevails, the defendant is entitled to curtesy beyond all question.

If estates tail are not abolished by force of our statute, then the estate descends by primogeniture to the eldest son, according to the common law, and the wife plaintiff would be entitled to no share of the estate. *Corbin* v. *Healey*, 20 Pick., 514 ; *Wright* v. *Thayer*, 1 Gray, 284 ; *Riggs* v. *Sally*, 15 Maine, 408; 1 Story Const., 60, 68.

The opinion of the court was delivered by

WILSON, J. This is an action of ejectment for certain land in the town of Jamaica. On the 24th day of February, 1832, Samuel Ingram of Newfane, in consideration of love and affection, conveyed to his " daughter Almena, and heirs of her body forever," the land to recover which this suit is brought.

The plaintiffs claim that, by the provisions of said deed, the title to the premises, and the right to the immediate possession thereof, upon the decease of the said Almena, vested in the " heirs of her body," and that said Angie E., being one of said heirs, the

plaintiffs are entitled to recover the estate. The defendant claims title to the premises as tenant by the *curtesy*. Hence, the general question is whether the said Almena had, at the time of her decease, such title to the land as would entitle her husband, the defendant, to hold said real estate as tenant by the *curtesy*. The 74th section of the act of 1821 ( Slade's compilation, page 348 ) provided that the husband of any woman who should die, leaving issue by such husband, should have and hold the real estate of such woman, as tenant by the *curtesy*. That statute did not limit the right of the husband to hold the lands of the wife, as tenant by the *curtesy*, to cases where she was seized in fee-simple, but would include real estate whereof she was seized in fee-tail. In 1823 an act was passed which provides "that when any man and his wife shall be seized of any real estate in her right in fee-simple, and issue shall be born alive of the body of such wife that may or might inherit the same, and the wife die, the husband shall have and hold such estate, during his life, as tenant by the curtesy." In *Giddings & wife* v. *Cox*, 31 Vt., 607, the court decided that the act of 1823 is a revisal of the entire subject, as to the right of the husband to hold lands as tenant by the *curtesy*, and that the act of 1821 was repealed by the act of 1823. The act of 1823 was in force at the date of said deed, and the provisions of that act have been continued, in all the statutes of this state, since that time. The statute, in express terms, confines the right of the husband to hold the real estate of the wife, as tenant by *curtesy*, to cases where they were seized in her right of such estate in fee-simple. Lands in this state are allodial, and the entire and absolute property is vested in the owners according to the nature of their respective estates. Fee-simple is a pure fee; an absolute estate of inheritance, that which a person holds inheritable to him and his heirs general forever. · Litt., § 1, Co. Litt., 1 b.; 2 Bl. Com., 106. *Termes de la Ley*. It is called fee-simple, that is pure, because clear of any condition or restriction to particular heirs, being descendible to the heirs general, whether male or female, lineal or collateral. It is the largest estate and most extensive interest that can be enjoyed in land, being the entire property therein, and it confers an unlimited power of alienation.

2 Bl., 106; Litt., § 11; 4 Kent Com., page 5. We may safely assume that the legislature, in the statute of 1823, used the words "of any real estate in fee-simple" to signify a pure inheritance clear from any qualification or condition, giving a right of succession to all the heirs generally, according to rules established by the law of this state for the descent of such real property. Under this construction of the statute, we have next to consider whether the deed from Samuel Ingram to his daughter Almena conveyed to her an estate in fee-simple. The granting part of the deed is "*unto the said Almena and heirs of her body forever.*" The words "heirs of her body" are words of descent, and taken in connection with the other parts of the deed, create what would be, by the common law and the statute *De Donis*, an estate tail; or, in other words, the deed creates an estate of inheritance by force of the statute *De Donis*, limited and restrained to the "heirs of her body," in exclusion of others. It is hardly claimed by the defendant's counsel that the words in the granting part of the deed create an estate in fee-simple. But the defendant does claim that the words "unto the said Almena and heirs of her body," in the premises, are enlarged by the words, in the *habendum*, "to the said Almena and heirs aforesaid, their heirs and assigns, to her and their own use and behoof forever." We think there is no repugnance between the different clauses of the deed. The language of the *habendum* shows very clearly that the grantor did not intend to enlarge or otherwise change what is imported in the granting part of the deed. The words "heirs aforesaid" were used to designate the "heirs of her body," to take from or after her. The words "their heirs and assigns" mean the heirs and assigns of the "heirs of her body." And the words "to her and their own use and behoof forever" mean that said Almena was to hold an estate of inheritance, limited and restrained to the "heirs of her body," who were, in the exclusion of others, by force of the limitation in the grant, to take the estate from her, upon her decease; and that the heirs aforesaid, that is the heirs designated in the granting part of the deed, were to hold according to the legal effect of said limitation, and so in respect to their heirs and assigns. In this case we have no occasion to define the estate which the immediate

heirs, that is the "heirs of her body," took by said deed. In *Jackson* v. *Hudson*, 3 Johnson, 345, KENT, C. J., says, "the intent, when apparent and not repugnant to any rule of law, will control technical terms, for the intent, and not the words, is the essence of every agreement. In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect." In *Flagg, admr.*, v. *Eames et al.*, 40 Vt., 16, it is said by the court that "where the purpose of the grant is clearly ascertained from the premises of the deed, and the premises contain proper words of limitation, and the *habendum* is repugnant to the grant, the *habendum* yields to the manifest intent and terms of the grant." But we think there are no terms in this deed, either in its premises or *habendum*, which indicate a purpose on the part of the grantor to convey to his daughter an estate in fee-simple. It is said by the defendant's counsel that the estate of the said Almena was a fee-simple in expectancy; that it became a fee-simple absolute in the "heirs of her body," by descent to them, at her decease, and that tenancy by the *curtesy* depends entirely upon the estate that passes to the heirs.

Whether the "heirs of her body" take an estate in fee-simple or not, does not establish a right in the defendant to hold as tenant by the *curtesy*. In order to give even plausibility to the argument of the defendant's counsel upon this point, it would be necessary to assume that her estate became in her right a fee-simple at her decease by relation back to the original grant, notwithstanding she was not seized of the estate in fee-simple in her life time. To hold thus would be to evade the statute and disregard the obvious purpose of the grant. It is, we think, plain from the provisions of the statute, that the question whether the husband is entitled to hold as tenant by the curtesy or not, must be determined by the estate of which the husband and wife were seized in her right in her life time.

If she had not in her life time an estate in fee-simple, then the husband and wife were not seized in her right of an estate in fee-simple, and he can derive no aid from the estate limited to the "heirs of her body," even though it descended from her to them,

and they held the estate free from the limitation in the grant. In *Giddings et al.* v. *Smith et al.*, 15 Vt., 344, it was held that a will made in 1774, and proved in 1781, containing a devise to " Elizabeth Harris and the lawful heirs of her body" gave her an estate tail. The case of *Giddings and Wife* v. *Cox*, 31 Vt., 607, decides the main question in the case at bar. In that case it appeared that Daniel Harris, by will, devised certain lands to his " daughter Elizabeth Harris, and the lawful heirs of her body." She was married to Christopher Bates, and by him had a daughter Rachel Bates, who married said Giddings and was one of the plaintiffs in that suit. Elizabeth Bates, (whose maiden name was Elizabeth Harris,) died on the 24th day of February, 1833, being more than fifteen years before that suit was brought; and her husband Christopher Bates died on the 24th day of May, 1836, being less than fifteen years before the commencement of that suit. The plaintiffs claimed to recover the land upon the title of the wife plaintiff, as heir of the body of said Elizabeth, under said devise. The defendant claimed title by adverse possession, and his title by adverse possession was made to depend upon the question whether the statute began to run against the wife plaintiff at the time of her mother's death in 1833, or not until her father's death in 1836, and that depended upon the question whether her father was tenant by the *curtesy* or not. The court decided that the said Elizabeth, by the devise of her father, held the title to the land in fee-tail, and that after the passage of the act of 1823, relating to tenancy by the *curtesy*, a husband did not become tenant by the *curtesy* of the land of his deceased wife, held by her in tail.

We think it is clear that the said deed did not give the said Almena an estate in fee-simple ; therefore the defendant is not entitled to hold as tenant by the *curtesy*.

The result is the judgment of the county court is reversed and judgment for the plaintiffs for the demanded premises, nominal damages and their costs.