CHARLES F. FRANK *et al. v.* MARGUERITE V. FRANK *et al.*

(*Jackson.* April Term, 1908.)

1. **WILLS.** Words "dying without issue" mean devisee's death without issue during testator's life, when.

In a devise and bequest of the residue of testator's estate to his children and legal heirs absolutely and in fee simple, and in equal shares, with a concluding provision in the same clause that should any of his children "die without issue, his or their share shall . . . revert" to the testator's "children then living, their heirs, and assigns forever," it is not only a settled rule of construction, but a rule of property, that the words "die without issue" contemplate and mean death of the devisee or legatee without issue surviving during the life of the testator. This rule is not abrogated by our statute (Shannon's Code, section 3675) providing that a contingent limitation made to depend upon the dying of any person without issue shall be a limitation to take effect when such person dies without issue living at the time of his death, unless otherwise expressly and plainly declared. This statute was enacted to change the common-law rule that the words "dying without issue," and other equivalent terms, imported an indefinite failure of issue, a total extinction of descendants of the first taker, and that a limitation over dependent upon such indefinite failure, or extinction, was void for remoteness, and as tending to create perpetuities, and that the first taker took an absolute estate. This is the only effect of said statute, which does not in any sense trench upon, or come in conflict with, the rule announced in the first paragraph of this headnote. (*Post, pp.* 573-578.)

Code cited and construed: Sec. 3675 (S.); sec. 2815 (M. & V.); sec. 2009 (T. & S. and 1858).

Acts cited and construed: Acts 1851-52, ch. 91, sec. 3.

Frank v. Frank.

Cases cited and approved:  Bramlett v. Bates, 1 Sneed, 554; Vaughn v. Cator, 85 Tenn., 302; Meacham v. Graham, 98 Tenn., 190; Katzenberger v. Weaver, 110 Tenn., 621.

Cases cited and distinguished:  Hottell v. Browder, 13 Lea, 676; Stoval v. Austin, 16 Lea, 700.

2.  **SAME.  A clear grant will not be modified by a later obscure provision, when.**

A clear grant of a fee by an earlier provision in a will will not be modified or qualified by a later obscure or ambiguous provision.  (*Post, pp.* 578, 579.)

3.  **SAME.  Construction of one clause will not aid in construction of another clause in same item, when.**

Where the language of each clause in a will is clear, the construction in the one can give no aid in arriving at the testator's intention in the other, though both clauses are found in the same item.  (*Post, p.* 579.)

Case cited and approved:  Simpson v. Smith, 1 Sneed, 396.

4.  **SAME.  Fee simple estate can not be enlarged by statement that it is to be possessed absolutely.**

Where the estate given in the opening sentence of an item of a will is one in fee simple, the further statement that it is to be "possessed absolutely" neither qualifies nor enlarges the estate, since an estate in fee simple is the largest estate and most extensive interest that can be enjoyed in land.  (*Post, p.* 579.)

Cases cited and approved:  Haynes v. Bourn, 42 Vt., 686; Friedman v. Steiner, 107 Ill., 125.

5.  **SAME.  Intention of testator to be ascertained and given effect.**

In the construction of wills, the courts assiduously seek to ascertain the intention of the testator, and when ascertained, it will be given effect, unless it contravenes some rule of law, or of public policy.  (*Post, pp.* 579, 580.)

Frank v. Frank.

Cases cited and approved: Thompson v. McKisick, 3 Humph., 631; Lynch v. Burts, 1 Heisk., 600.

6. **SAME. Grammatical construction departed from, and words transposed, rejected, or supplied, to ascertain intention, when.**

Where a strict adherence to grammatical construction would frustrate the intention of the testator, or where the words used are so unintelligible, obscure, or absurd, that they have no place in and give no effect to the testator's manifest legal intention, and there cannot be a rational construction of the words as they stand, the court may, in order to effectuate the testator's intention, transpose, reject, or supply words. (*Post, p.* 580.)

Cases cited and approved: Williams v. Williams, 10 Yerg., 20; Reid v. Hancock, 10 Humph., 368; Seay v. Young, 2 Head, 418; Massie v. Jordan, 1 Lea, 646; Jobe v. Dillard, 104 Tenn., 656.

7. **SAME. Effect given to later of repugnant clauses, when.**

Where the clauses in a will are so repugnant to each other that it is impossible to reconcile them, under settled rules of construction, then effect must be given to the later provision. (*Post, p.* 580.)

8. **SAME. Estate in fee given in one clause may be cut down to a life estate in a subsequent clause.**

Where one clause of a will devised land absolutely and in fee simple to certain children of the testator, and a later clause provided that the property should be held by them "for and during their natural lives, with remainder in fee to their children, and in default of children surviving either of them, then to" the testator's "children who shall then be living," the later clause controlled, and such children of the testator took only an estate for life. (*Post, pp.* 570, 571, 579-584.)

9. **SAME. Remainder in children of devisee for life is vested or contingent, when.**

Where the testator devised a life estate to his daughters, with remainder in fee to their children, and in default of children, then to the testator's children who should then be living, the

Frank v. Frank.

remainder was vested in such of the testator's grandchildren (children of said daughters) as were in existence when the will took effect, and contingent in the case of any daughter at that time without children. (*Post, p.* 584.)

10. **SAME.** Passing of estate to testator's children in default of children of life devisee is an executory devise limited upon or fee.

Where a testator devised a life estate to his daughters, with remainder in fee to their children, and in default of children, then to the testator's children who should then be living, the provision for the passing of the estate to the testator's children then living was in the nature of an executory devise, which can be limited upon a fee. (*Post, pp.* 584, 585.)

11. **SAME.** Term "children" does not include testator's grandchildren under devise of remainder to his children, when.

Where the testator devised a life estate to his daughters, with remainder in fee to their children, and in default of children then to the testator's children who should then be living, the term "children" cannot be enlarged to include the testator's grandchildren, or the children of a deceased child of the testator, where there was nothing in the context to authorize such enlargement, but rather restricting the provision to testator's children. (*Post, p.* 585.)

Cases cited and approved: Booker v. Booker, 5 Humph., 500; Turner v. Ivie, 5 Heisk., 220.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

TURLEY & TURLEY, for complainants.

PERCY FINLAY, guardian *ad litem.*

Frank v. Frank.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

On a former day of the term an opinion was handed down undertaking to construe the will of the late John F. Frank. The complainants have filed a very earnest petition asking for a re-examination of the matters then determined; it being insisted that in the affirmance of the decree of the chancellor, and adopting his construction of this will, serious errors had been committed against them. The chief error assigned is upon the holding as to the fourth item of the will. This item is as follows:

"Fourth. I hereby give, devise, and bequeath to my seven children and legal heirs, to wit, Charles F., Robert B., John L., Walter A., Clara M., Elizabeth G., and Lenora E. Frank, now Mrs. S. A. Bowen, all my property, real and personal and mixed, wherever situated, not already disposed of, which I now own or may hereafter acquire, and of which I may die seised and possessed, absolutely and in fee simple, and in equal shares. The division shall be made by three commissioners, to be appointed by my said children, and the lots and parcels of land so divided shall be drawn for by them and any difference in the valuation be settled among themselves. The property of my daughters, however, shall be held and owned by them for their sole and separate use and enjoyment, free from the debts and contracts of any husband, for and during their natural lives, with remainder in fee to their children, and in default of children sur-

viving either of them, then to my children who shall then be living, their heirs and assigns forever, and if any one of my sons die without issue his or their share shall also revert to my children then living, their heirs and assigns forever."

In the first clause of his will the testator provides for the payment of his debts and funeral expenses out of his personal estate; in the second item he devises to two of his daughters and one of his sons a piece of real estate in the city of Memphis; in the third he creates a trust fund in the interest of his young grandson, and by this fourth item disposes of the residuum of his estate wherever situated. As will be seen by the opening clause of this last item, this residuary estate is devised and bequeathed to his "seven children and legal heirs," consisting of four sons and three daughters, "absolutely and in fee simple, and in equal shares." Considering, first, the character of the estate which his sons take under this item, it will be observed that, having created in them an estate in fee in their several shares, in the concluding sentence of the item the testator provides as follows: "Should any of my sons die without issue, his or their share shall also revert to my children then living, their heirs and assigns, forever." The question is: What effect, if any, do the words "should any of my sons die without issue" then have upon the fee granted in the earlier part of this item?

Upon a reconsideration of this question, we have reached the conclusion that a death without issue, here

contemplated, under a settled rule of construction, must be held to mean such an event occurring in the life of the testator. This question underwent a careful examination in the case of *Katzenberger* v. *Weaver,* 110 Tenn., 621, 75 S. W., 937. In that opinion the English authorities were collated, and it was found that they established the rule as announced in Theobald on Wills, p. 336, and in 3 Jarman on Wills, 605, to wit: "If there is an immediate gift to A. and a gift over in case of his death, or any similar expression implying the death to be a contingent event, the gift over will take effect only in event of A.'s death before the testator."

This rule, so thoroughly imbedded in English jurisprudence, is shown in that opinion to have been approved and applied by this court in *Vaughn* v. *Cator,* 85 Tenn., 302, 2 S. W., 262, and *Meacham* v. *Graham,* 98 Tenn., 190, 39 S. W., 12, and was held to control in the case then in hand. The principle of these cases was again applied in *Guthrie* v. *Elliott,* at December term, 1907 (no opinion filed). Thus recognized, we think it obtains in this State now, not only as a rule of construction, but also as a rule of property, and that it should not be departed from in this case, though it is shown that the testator, Frank, at the time of the making of the will, was advanced in life, and, in the nature of things, his sons were likely to outlive him. The peculiar facts found to exist in *Hottell* v. *Browder,* 13 Lea, 676, and *Stoval* v. *Austin,* 16 Lea, 700, were held in those cases to warrant a departure from the rule; but we

think that we are not authorized upon this authority
to evade the rule in the present case.

It is insisted, however, that this rule was abrogated
by section 3, c. 91, p. 113, of the Acts of 1851-52, carried
into Shannon's Code, section 3675, and that this provision
was overlooked in deciding the three several cases
of *Vaughn* v. *Cator, Meacham* v. *Graham,* and *Katzenberger* v. *Weaver.*   That section is as follows: "Every
contingent limitation in any deed or will, made to depend upon the dying of any person without heir, or heirs,
of the body, or without issue of the body, or without
children, offspring or descendants, or other relative,
shall be a limitation to take effect when such person dies
without heir, issue, children, offspring, or descendants,
or other relative, as the case may be, living at the time
of the death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise expressly and plainly declared in the face of the
deed or will creating it."

In the English courts it was held from an early case,
with regard to real estate, that the terms "dying without
issue," and other equivalent terms, imported an indefinite failure of issue—a total extinction of descendants
of the first taker—and a limitation over dependent upon
such indefinite failure, or extinction, was void for remoteness, and as tending to create perpetuities, and
that the first taker took an absolute estate.   It was
otherwise, however, as to personal property, as to which
the import of these terms was a failure of issue at the

death of the first taker.  Much curious learning was expended upon these terms whenever applied to real estate, especially in view of the fact that the construction given them often disappointed the intention of the testator and led to inequitable, if not absurd, results.  To avoid these consequences the courts constantly sought a way to avoid the application of the rule, and, to do so, seized upon every manifestation of the testator's intention, found in the context, to construe them in the restricted sense of issue living at the death of the first taker. *Bramlett* v. *Bates,* 1 Sneed, 554.

To relieve both against the confusion engendered by this effort, as well as the frequent disappointment of the intention of the maker of the will, the English Parliament, by an act passed in 1 Victoria (1837), abrogated the common-law rule and provided "that words which may import a want or failure of issue of a person at his death, or an indefinite failure of issue, shall be construed to import a want or failure of issue at the death of such person." 3 Jarman on Wills, 340.  It will be found, upon comparison, that the section of the Code quoted above, in spirit largely, and in text substantially, conforms to the English act, and, as has been held by this court, was passed, as that was, to change this old common-law rule.  This is its only effect.  It does not in any sense trench upon, or come in conflict with, that other rule announced in *Katzenberger* v. *Weaver,* supra, and the earlier cases upon which that was based.

The result is that the decree heretofore pronounced, holding that the sons, under the fourth item of the will, took a determinable fee, is withdrawn, and the decree of the chancellor so adjudicating is also reversed.

Coming, now, to the consideration of the estates devised to his daughters, we find much more difficulty. In the first clause of this fourth item the daughters are provided for equally with the sons, in that each of the seven children is given a share in the residuary estate. "absolutely and in fee simple." Omitting, as of no value in guiding to the correct settlement of the question in hand, the sentence providing for the appointment of commissioners to make partition among the testator's children, we find that item 4 then proceeds: "The property of my daughters, however, shall be held and owned by them for their sole and separate use and enjoyment, free from the debts and contracts of any husband, for and during their natural lives, with the remainder in fee to their children, and in default of children surviving either of them, then to my children who shall then be living, their heirs and assigns forever."

It will thus be seen that the testator has clearly and unmistakably announced his intention to limit his daughters to a life estate in their respective shares, as in the opening clause he had by its terms created in them an ownership in fee. There is no obscurity in either of these clauses, and therefore there is no room for the operation of the rule, frequently applied in the construction of statutes, that a clear grant of a fee by

an earlier provision in a will will not be modified or qualified by a later obscure or ambiguous provision.

It may be remarked in this connection that, though the devises in favor of the sons and daughters are found in the same item, yet they are as independent of each other as if found in distinct items. The language as to each clause being clear, the construction in the one can give no aid in arriving at the testator's intention in the other. *Simpson* v. *Smith,* 1 Sneed, 396.

Nor do we think any importance is to be attached to the use of the word "absolutely" in this item. The estate given in the opening sentence of this item is one in fee simple, and when the testator said that it was to be "possessed absolutely" these words neither qualified nor enlarged the estate granted, nor did it give any distinguishing mark from those which inhere in the nature of an estate in fee; for "a fee-simple estate is so called because it is clear of any condition or restriction as to particular heirs. It is the largest estate and most extensive interest that can be enjoyed in land, being an absolute estate in perpetuity. . . ." 16 Cyc., 602. It is a "pure fee; an absolute estate of inheritance; that which a person holds inheritable to him and his heirs general, forever." *Haynes* v. *Bourn,* 42 Vt., 686; *Friedman* v. *Steiner,* 107 Ill., 125.

Thus we have in this fourth item of the will, so far as the daughters are concerned, a clear devise in fee to them, followed by as clear an expressed purpose, on the part of the testator, to cut their interest down to a life estate in the property given to them.

In every case the courts assiduously seek to ascertain the intention of the testator, and, when ascertained, it will be given effect, unless it contravenes some rule of law or of public policy. Pritchard on Wills, section 388; *Thompson* v. *McKisick,* 3 Humph., 631; *Lynch* v. *Burts,* 1 Heisk., 600. And "when a strict adherence to grammatical construction would frustrate the intention of the testator, or where the words used are so unintelligible, obscure, or absurd, that they have no place in and can give no effect to the testator's manifest legal intention, and there can be a rational construction of the words as they stand, the court may, in order to effectuate the testator's intention, transpose, reject or supply words. Pritchard on Wills, section 395; *Reid* v. *Hancock,* 10 Humph., 368; *Williams* v. *Williams,* 10 Yerg., 20; *Seay* v. *Young,* 2 Head, 418; *Massie* v. *Jordan,* 1 Lea, 646; *Jobe* v. *Dillard,* 104 Tenn., 656, 58 S. W., 324.

If, after all this is done, yet the clauses in question are found so repugnant to each other that it is impossible to reconcile them, under settled rules of construction, then effect must be given to the later provision, since it controls. It is evident that, unless a principle could be found authorizing the adoption of one and the rejection of the other of the two parts of the will, irreconcilably inharmonious, it would be necessary to hold that both were void, as each would have the effect of frustrating and destroying the other. As Mr. Jarman, in his work on Wills (5th Am. Ed., vol. 2, p. 44), says: "With a

view to prevent this most undesirable result, it has become an established rule in the construction of wills that where two clauses or gifts are irreconcilable, so that they cannot possibly stand together, the clause or gift which is posterior in local position shall prevail; the subsequent words being considered to denote a subsequent intention. . . ." Hence it is said by the author, continuing on this subject, "that a will can seldom be rendered absolutely void by mere repugnancy; for instance, if a testator in one part of his will gives to a person an estate of inheritance in lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a life interest only, the prior gift is restricted accordingly."

The present case falls directly within the class embraced in the last sentence above quoted, as we have here a prior clause giving an estate in fee and a subsequent passage in the same item of the will giving the devisees an estate for life in the same property. As illustrations of the effort upon the part of the courts to avoid, if possible, a destruction of two such provisions upon the ground of repugnancy, and, while giving effect to the last passage in the will, preserving as far as possible the first provision, the author cites quite a number of cases. Among these is that of *Crom* v. *Odell,* 1 Ba. & Be., 449. There the testator devised the residue of his real and personal property to his children, A., B., and C., and to all their younger children, their heirs,

executors, administrators, and assigns, forever. So far it was a clear joint devise; but he declared, further, that he intended that A. should receive the entire interest or income of the part of his real or personal fortune provided for A.'s younger children during his (A.'s) life. He then made a similar direction as to the shares of B. and C., and then provided that, in case any of his said three children (A., B., and C.) should die, the share of such one dying should go to the younger children of such child; if no younger children, to the survivors. He also gave the parents a power of distribution among their younger children. It was held in the lower court that the meaning of this provision was that the parents of the children jointly took the several interests in the property disposed of. This, however, was reversed by a superior court, which determined that the parent simply took life interest, with a power of distribution among their younger children.

The application of the principle, however, is more clearly shown in *Sherrat* v. *Bentley*, 2 My. & K., 149. There a testator, after bequeathing several legacies, devised to his wife a certain messuage and all other real estate, his household goods, and all other his personal estate, to hold to his said wife, her heirs, executors, administrators, and assigns, forever. The testator then provided that none of his legatees should be entitled until twelve months after his wife's decease; and in case she should happen to die in his lifetime, and the devises and bequests to her in the will should lapse, he gave the

estate and effects, real and personal, comprised therein, to S., his heirs, executors, etc., to the use of such persons as his wife should, in her lifetime, by writing under her hand, appoint. He then gave some pecuniary legacies, and proceeded to devise and bequeath to W. A. and his (the testator's) brother-in-law's children the residue of his real and personal estate, to be equally divided among them, share and share alike, at the decease of his said wife. The heir at law contended that the will was void for uncertainty, on account of the repugnance between the gift to the wife, her heirs, etc., and the subsequent gift of the residue to others, to be divided at her decease. The person claiming under the will contended that the pecuniary legacies and the gift of the residue were only to take effect in the event of her decease in the testator's lifetime; but the Master of the Rolls was of opinion that there was no warrant for so construing the will, inasmuch as he found that the testator's general intention, as collected from the concluding passages in the will, was to give the wife the full enjoyment during her life only, and to give it over to the persons named afterward, and that the words "heirs, executors, administrators, and assigns," used in the early part of the will in connection with the devise and bequest to the wife, were to be rejected. In reaching this conclusion the Master of the Rolls, as one of the grounds of his decision, referred to the rule that the latter part of the will holds against inconsistent expressions in the prior part of it. On appeal, Lord

Brougham affirmed the decree, observing that either the testator had changed his intention, and was minded to give his wife a life estate, instead of fee, or he was ignorant of the force of the words that he had originally used, and those words must be rejected as having been used by mistake. The former alternative was the one to which the rule led, sanctioned by the authorities, which were stated in the opinion of the Lord Chancellor.

We are entirely satisfied that the words "possessed absolutely" and "in fee simple," so far as they affect the shares of the testator's estate given to the daughters, must be rejected as having been used without knowledge of their import, and that in doing this the court is well satisfied, not only by the authorities already cited, but by a general rule of construction applied by all courts, so far as we have a knowledge, and approved by the best text-writers.

The result is that the estate of the daughters is cut down to that which we think it clear it was the intention of the testator to give them; that is, an estate for life. This difficulty being removed, none exists as to the devise over in remainder to the children of these daughters. This remainder would be a vested remainder in such of the testator's grandchildren as were in existence when the will took effect, and contingent in the case of such daughter or daughters of the testator as at that time were without children. The provision, as to the estate of a daughter who died leaving no children surviving, for the passing of the estate to the children of

the testator then living, is in the nature of an executory devise, which, under all the authorities, can be limited upon a fee.

We are also satisfied that in the contingency last named; that is, of the death of one of the testator's daughters without children, the estate of such daughter will pass to the children of the testator at that time living, and that the children of the deceased child of the testator will not be permitted to participate. While it is true that the term "children" has often been construed to embrace grandchildren, in view of the context in the instrument being examined, yet there is nothing in this will to authorize the enlargement of the term; but we think the terms of the will necessarily restricted this provision to the children of the testator. The devise over was "to my children who shall then be living." We see no escape from this conclusion. *Booker* v. *Booker*, 5 Humph., 500; *Turner* v. *Ivie*, 5 Heisk., 220.

We are satisfied with the conclusion reached, and already announced, as to the third paragraph of the will. We pretermit any expression as to the sixth clause, as the contingency therein provided has not arisen and may not arise. We will only say that we see no reason why the term "heirs," as used in that clause, should not have the same meaning as was attributed to it in the construction of the third item of the will. This might in the end produce the result suggested by the counsel for complainants; but, if it does, the fault rests with the testator, and not with the courts.