IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

MIDDLE DIVISION.

(*Nashville.* December Term, 1919.)

JOHN MARIUS HOGGATT *et al. v.* W. C. CLOPTON*
J. W. CLOPTON *et al. v.* W. C. CLOPTON *et al.*

(*Nashville.* December Term, 1919.)

1. **WILLS.** Intention to be found from instrument as a whole.
The court should seek to discover testator's intention regarding the
will as a whole, and not any separate portion or expression. (*Post,*
*pp.* 192-196.)

Cases cited and approved: Vaughan v. Cator, 85 Tenn., 302; Meacham
v. Graham, 98 Tenn., 192; Katzenberger v. Weaver, 110 Tenn., 620;
Scruggs v. Mayberry, 135 Tenn., 586; East v. Burns, 104 Tenn.,
182; Hottell v. Browder, 81 Tenn., 678; Adkinson v. Adkisson,
4 Higgins, 458; Armstrong v. Douglas, 89 Tenn., 223.

Cases cited and distinguished: Lynch v. Burts, 48 Tenn., 600;
Frank v. Frank, 120 Tenn., 580.

---

*On effect of limitation over in case the person to whom property
is given in the first instance dies without lineal decendants, issue,
children, heirs of the body, etc., to give to his issue an interest by
implication either by way of remainder, executory devise, or sub-
stantial gift, see not in 51 L. R. A. (N. S.), 485.

184

Hoggatt v. Clopton.

2. **WILLS.** Devise with limitation over on devisee's death without children creates base fee with executory devise over.

Under will ginving testator's wife absolutely certain lands, and for life half of all his estate in a particular county, and to his niece half of all his property in such county, the estate in such county to be kept together and managed for the joint benefit of the niece and wife until one should marry, and after, if they chose, the property to go to the niece on death of wife, and "in the event of her dying without children or grandchildren the property to go" to the children of a deceased nephew then living, the niece took a base or determinable fee in the property; there being a valid executory devise over in favor of children of the nephew on death of the neiece at any time without children or grandchildren. (*Post,* *pp.* 196, 197.)

3. **WILLS.** "Child" or "children" did not mean grandchildren at common law.

The rule at common law was that the ordinary meaning of "child" or "children" was the legal meaning, and that such words meant immediate offspring, and did not include grandchildren. (*Post,* *pp.* 197, 198.)

Cases cited and approved: Turner v. Ivie, 52 Tenn., 222; Frank v. Frank, 120 Tenn., 585; Grant v. Mosely, 52 S. W., 508; Jarnagin v. Conway, 21 Tenn., 50; Booker v. Booker, 24 Tenn., 505; Cruse v. McKee, 39 Tenn., 1; Collins v. Williams, 98 Tenn., 525; Tipton v. Tipton, 41 Tenn., 252.

Case cited and distinguished: Booker v. Booker, 24 Tenn., 505.

4 **WILLS.** Devise to children not incuding grandchildren.

Executory devise over, in the event of death without children or grandchildren of a niece, devising a base or determinable fee to the "children" of a deceased nephew then living, *held* not to include grandchildren of such nephew; the word "children" having been used in its ordinary sense, in view of the context. (*Post, pp.* 198, 199.)

FROM RUTHERFORD.

Appeal from the Chancery Court of Rutherford County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. W. S. BEARDEN, Chancellor.

FRANK P. BOYD and CHAMBERS & CHAMBERS, for Hoggatt.

WEBSTER & WEBSTER and SAM HOLDING, for J. W. Clopton and others.

T. B. LYTLE, W. C. CLOPTON and VERTEES & VERTEES for W. C. Clopton & others.

MR. McALISTER, Special Judge, delivered the opinion of the court.

Dr. J. W. Hoggatt, a citizen of Davidson county, died at his home near Nashville, March 7, 1863. By his last will executed January 29, 1863 (about five weeks prior to his death), he disposed of a large estate, consisting of both realty and personalty, situated in Davidson, Sumners, Wilson, and Rutherford counties, in this State, and a cotton plantation in the State of Mississippi. The present controversies have to deal alone with the disposition made by the testator of a large tract of land in Rutherford county, now said to be very valuable. The provisions of the will that relate to this tract of land are to be found in the first and second items thereof, and are as follows:

(1) 'To my wife I will give *absoultely* [certain lands in Wilson and Summer counties, not involved.] I also

give to her for life one half of all my estate both real and personal in Rutherford county,'' etc.

(2) ''I give to my niece, Emily Gentry, who has been raised by me from earliest infancy and has ever been affectionate and dutiful, the one-half of all my property both real and personal, in Rutherford, with the exception stated in the first clause, to which I add there and here the negro girl Milly. This property I desire to be kept together and the business to be conducted as heretofore, for the joint benefit of my wife, and her, *until one of them should marry, and after,* if they choose, but at the request of either party, the property may then be divided equally. At the death of my wife I give the remainder to my said niece. I also give to her my boy Alfred, son of Jim on this place and my boy Yellow John and his wife with any children they have or *may* have, now on my place in Yazoo. I also give to her the other half of all my notes undisposed of below, and the money that may remain after the settlement of my estate and the cotton, or the proceeds of the same which I own in Yazoo, the other half of all which having been already given to my wife in the foregoing clause. All the property given to my said niece in this clause or any other is to be held to her sole and separate use. *But in the event of her dying without children or grandchildren, then the land and slaves in Rutherford should go to the children of John H. Clopton,* deceased, who may then be living.''

The last item of the will is pertinent to what is said hereafter and should also be set forth here. It is as follows:

11. I appoint my friend Robert L. Caruthers, my executor, without requiring him to give security. I also appoint him trustee for my niece Emily Gentry *until* her marriage. I also empower him to appoint his successor in the executorship by deed or will if he should die *before the business instrusted to him as executor and trusteeship should be closed.*"

The testator's widow died in 1887. Emily Gentry, though referred to in the will as the "niece" of the testator, was in fact the niece of his wife. She married T. T. Hillman in 1867, and died "without children or grandchildren" in July, 1917. Her last will is very lengthy, covering about 25 pages of the transcript. The seventh item thereof is as follows:

"Item VII. I give, devise, and bequeath to the children, of Sandifer Hoggatt, the nephew of Dr. J. W. Hoggatt, share and share alike (the child or children of any deceased child taking the share which the parent would have taken if living), all my interest, *if any,* in the land near Murfreesboro, Tennessee, which was devised to me by the will of James W. Hoggatt, deceased, said land being in Rutherford county, Tennessee."

This is only reference in the will of Emily Gentry Hillman to the land in controversy.

At the time of the death of the testator in 1863, there were five living children of his nephew, John H. Clopton, deceased, of whom the defendant W. C. Clopton, at that time 15 years of age, was the youngest. In addition, one of the sons was married and had a child.

On the death of Emily Gentry Hillman in 1917, the defendant W. C. Clopton was the only survivor of the

"children of John H. Clopton, deceased," and he claimed the land as his and took possession thereof.

On September 11, 1917, the complainants John Marius Hoggatt and four others, being the only surviving children and grandchildren of Sandifer Hoggatt, deceased, referred to in the seventh item of the will of Emily Gentry Hillman, filed their original bill in the chancery court of Rutherford county against the defendant, W. C. Clopton, wherein they set up their claim to the entire tract of land as devisees under the will of Emily Gentry Hillman, deceased.

Two days thereafter, the complainants J. W. Clopton and others (ten in all), children of the other four deceased sons of John H. Clopton, deceased, filed their original bill in the same court against the defendant W. C. Clopton, the only surviving son "of John H. Clopton, deceased," and also against the complainants in the first suit. These complainants (in the second bill) denied that the complainants in the first bill had any interest in the land in controversy, and alleged that they, grandchildren of John H. Clopton, deceased, were nevertheless "*children* of John H. Clopton, deceased," as that word was used in the will of Dr. Hoggatt, and therefore as such were joint owners of the land with W. C. Clopton.

Answers were duly filed by the defendants in each case and the facts (as herein recited) where formally agreed to. On such bills, answer, and stipulations the cases were heard by the chancellor, who decided in each case that the defendant W. C. Clopton was the sole owner of the land. Both these decrees have been affirmed by the court of civil appeals.

Petitions for *certiorai* were duly filed in this court by the complainants in each case, both of which petitions at a former day of the term were granted, and the causes have been elaborately argued at the bar.

From the foregoing statement it will have been noticed that there are two questions presented for decision, viz.:

First. Was the limitation over in favor of the "children of John H. Clopton, deceased, who may then be living," a valid executory devise, intended by Dr. Hoggatt to take effect "in the event of her [Emily] dying without children or grandchildren." *at any time,* or did the testator mean that the limitation over was only to be effective if Emily died "without children or grandchildren" *in his own lifetime,* or in the lifetime of his widow, or at most before the marriage of Emily.

Second. If the limitation over be upheld as a valid executory devise, is the defendant W. C. Clopton the only beneficiary thereunder, or did Dr. Hoggatt intend to include also the children of deceased sons "of John H. Clopton, deceased," living at the time of the death of Emily, "without children or grandchildren."

We proceed to dispose of these propositions in the order stated.

In behalf of the children and grandchildren of Sandifer Hoggatt (who claim under the seventh item of the will of Emily Gentry Hillman) it is insisted that when the testator directed that the lands should go to the "children of John H. Clopton, deceased, who may be then living," that is, when Emily Gentry died "without children or grandchildren," he merely had in

mind the death of Emily without children or grand-
children in his own lifetime, and that as soon as Emily
Gentry survived the testator she became invested with
a fee-simple title to said lands, subject only to the life
estate of the widow in one-half thereof.  These com-
plainants further insist, however, that if it should
be decided that the testator did not mean that the
limitation was only to be effective if Emily died
before he died, at least he meant that it was to be
effective if Emily died without children or grandchildren
before the death of the testator's widow, or before
her own marriage, and, she having survived both
appointed times her estate became absolute.

The first of these contentions, which is the one
apparently asserted most confidently, is said to rest
upon the decisions of this court in the cases of *Vaughn* v.
*Cator,* 85 Tenn., 302, 2 S. W., 262; *Meacham* v. *Graham,*
98 Tenn., 192, 39 S. W., 12; *Katenburger* v. *weaver*,
110 Tenn., 620, 75 S. W., 937; *Frank* v. *Frank,* 120
Tenn., 571, 111 S. W., 1119; *Scruggs* v. *Mayberry,*
135 Tenn., 586, 188 S. W., 207.

In those cases it was successively held that death
"without lawful issue," death "without living chil-
dren," death "leaving a child or children," death
"without issue," and death "without heirs," meant
that such death was to take place in the lifetime
of the testator, and, the first taker having survived
the testator, the subsequent limitation over in each
will so construed failed, and the first taker's estate
was adjudged to be absolute.  So it is said on the
authority of these cases that when Dr. Hoggatt gave this

land to the "chidren of John H. Clopton, deceased, then living," that is, at the time of the death of Emily Gentry "without children or grandchildren" that expression is in all respects equivalent to the expressions in each of the cases referred to, and should therefore be construed to mean Emily's death before that of the testator.

The cardinal rule in the construction of all wills is that the court should seek to discover the intention of the testator. To this rule all other rules of construction must necessarily yield. This intention is not to be ascertained from any separate portion or expression in the will, considered apart from the rest of the instrument, but is to be arrived at from a consideration of the will as a whole. Speaking of this duty of the court in construing wills, Sir James Wigram, in the introduction to his treatise on Wills at page viii of the second edition, says:

"Therefore there is not a single rule commented on in the following pages that may not be precluded or overborne by the special text of the will."

Similarly, O'Hara, in his Commentaries on Wills, at page 120, observes:

"The reader of a treatise on wills, therefore, should remember that every rule and exception thereto which he is reading applies only if the testator has said nothing to the contrary. If he has, the will of the testator, and not the rule of law, will be followed."

Again in *Lynch* v. *Burts,* 1 Heisk., 600, at page 604, this court said:

"It is said that the great rule in the construction of wills is that the intention of the testator, ascertained

from the particular words used, from the context, and from the general scope and purpose of the instrument, is to prevail and have effect. . . .

"To this rule it is held that all others, except those founded upon public policy, and the necessity of sustaining established principles of law, are not only subordinate but auxiliary."

The rule is spoken of by Chief Justice BEARD in *Frank* v. *Frank,* 120 Tenn., 580, 111 S. W., 1121, as follows:

"In every case the courts assiduously seek to ascertain the intention of the testator, and, when ascertained, it will be given effect, unless it contravenes some rule of law or public policy."

See, also, to the same effect, Pritchard on Wills, sections 387, 393; *East* v. *Burns,* 104 Tenn., 182, 56 S. W., 830; *Katzenberger* v. *Weaver,* 110 Tenn., 628, 75 S. W. 937; *Hottell* v. *Browder,* 13 Lea, 678; *Adkisson* v. *Adkisson,* 4 Higgins, 458; *Armstrong* v. *Douglass,* 89 Tenn., 223, 14 S. W., 604, 10 L. R. A., 85.

From these authorities, and from many others that might be cited, it is apparent that the construction placed upon the expressions used in *Vaughn* v. *Cator Meacham* v. *Graham,* *Katzenberger* v. *Weaver,* *Frank* v. *Frank,* and *Scruggs* v. *Mayberry,* would in each case have yielded to any clear expression of the testator indicative of his purpose to make the death of the first taker mean a death at any time, and it was because no such clear intention was to be found in any of those wills that the rule in question was applied.

13—142 Tenn.

It is therefore first necessary to examine the will of Dr. Hoggatt as a whole, for the purpose of ascertaining whether there is to be found therein any expression from which it can be clearly seen that, when he spoke of the death of Emily Gentry "without children or grandchildren," he meant her death at any time, rather than her death before his own death.

In the preamble to his will Dr. Hoggatt referred to the state of his own health as "precarious," and his forebodings in this respect proved true, for he died about five weeks after making his will. Emily Gentry was then 19 years of age, and it is fair to assume not in contemplation of an immediate marriage, because Dr. Hoggatt directs that the two halves of this tract of land were to be managed together for the joint benefit of his widow and foster daughter until one of them should marry, and he, in addition, names a trustee to take charge of Emily's affairs until she should marry. In fact, she was not married until four years thereafter. Having made these directions for the management of the property, no part of which could have been executed until after his own death, he says that, in the "event of her [Emily] dying without children or grandchildren," the land was to go to others. Is it reasonable to suppose that Dr. Hoggatt was contemplating that Emily should marry, have children, that one of her own children should then marry and have children, and that she should then die, while he (the testator, then an old man of 65 in precarious health) was still alive? On the contrary, is it not clear that, when he spoke of the death of Emily "without children or grandchildren,"

he could not possibly have been referring to her death in his own lifetime, but necessarily to her death after his own?

Again, the limitation over in favor of the children of John H. Clopton deceased was a limitation of the entire estate, not of either half thereof, and shows that the testator had in mind that Emily Gentry would survive the life tenant (as the event proved) would become possessed of the whole estate, and that it should all go to the Clopton children on the contingency named. This was clearly his purpose. If the contention of complainants be sound, then, on the happening of the contingency, the Clopton children might become possessed of one-half of the lands, while the widow of the testator would own the other half for life. We think this shows that the testator was not contemplating the death of Emily in the lifetime of Mrs. Hoggatt, but, on the contrary, was assuming that, as much the younger woman, she would survive her aunt, and become possessed of the whole estate.

It is no answer to this construction of the purpose of the testator, as revealed by the language used, to say that it was entirely possible that Emily Gentry could have died leaving grandchildren while Mrs. Hoggatt was still alive. The question is, not what was possible to happen to the two objects of Dr. Hoggatt's bounty, but what was his evident belief as to the identity of the survivor.

The contention last made by complainants on this aspect of the case is that at least Dr. Hoggatt meant to refer the time of Emily's death to a date before her

marriage. That he could have intended her title to this land to become absolute on her "marriage without children or grandchildren" is in our opinion obviously unsound.

There are other expressions in the will which unmistakably refer to events that could only occur after the testator's death, and on the supposition that Emily Gentry had survived him and was in the enjoyment of the property given her. The controlling significance of such expressions was recognized by Mr. Justice NEIL in *Katzenberger* v. *Weaver*, when, first referring to the case of *Alston* v. *Davis*, 2 Head, 268, he agrees that they prevent the application of the rule reaffirmed in that case.

On this branch of the case, therefore, our conclusion is that Emily Gentry took a base or determinable fee in this property; that there was a valid executory devise over in favor of the children of John H. Clopton, deceased, on the happening of the contingency specified, viz., the death of Emily Gentry Hillman in 1917 without children or grandchildren.

Having determined that the limitation over is a valid executory devise, is the defendant W. C. Clopton the only beneficiary thereunder, or did Dr. Hoggatt intended to include also the children of the deceased sons of John H. Clopton, deceased, living at the time of the death of Emily "without children or grandchildren?"

At the time of the making of the will, as has been heretofore shown, there were five living sons of the testator's nephew, John H. Clopton, deceased. The oldest of these sons was then 32 and the youngest, the

defendant W. C. Clopton, was 15 years of age. It has also been noticed that one of these sons was married and at that time had a living child.

There can be no doubt that the rule of the common law was that the ordinary meaning of the word "child" or "children" was also the legal meaning, and that such words meant immediate offspring, and did not include grandchildren.

This rule is thus stated in Corpus Juris, volume 11, p. 753:

"It is a general rule of common law that the words 'child' and 'children' do not in their natural sense and proper signification include a grandchild or grandchildren, and are employed in contradistinction to the terms 'heirs,' 'heirs of the body,' 'bodily heirs,' 'issue,' or more remote descendants; but this rule is subject to some exceptions where it is apparent that it was intended to give the terms a more extended signification. These exceptions are perhaps generally and universally confined to cases where it was necessary so to hold in order to give effect to the words of the instrument, or to the evident intention of the party executing it," etc.

Appended to the statement thus made in the text are a great number of cases commenting on the general rule, as well as the various limitations and acknowledged exceptions thereto. Special attention is called to note 5, on page 753, and note 12a on page 754. It would serve no useful purpose to attempt to analyze these cases. It is enough to say that the statement in the text is in harmony with the Tennessee cases on the subject, some of which are: *Turner* v. *Ivie*, 5 Heisk., 222,

230; *Frank* v. *Frank,* 120 Tenn., 585, 111 S. W., 1119; *Grant* v. *Mosely,* 52 S. W., 508 (Chy. App. J., 899); *Jarnagin* v. *Conway,* 2 Humph., 50; *Booker* v. *Booker,* 5 Humph., 505; *Cruse* v. *McKee,* 2 Head, 1, 73 Am. Dec., 186; *Collins* v. *Williams,* 98 Tenn., 525, 41 S. W., 1056; *Tipton* v. *Tipton,* 1 Cold., 252.

In the case of *Booker* v. *Booker,* 5 Humph., 505, Judge GREEN says: 'Besides, the term 'children' expresses the immediate offspring of the parent; neither in its vulgar nor its legal sense is it expressive of remote descendants; to make it so meant it must be coupled with other expressions which will give to it such a signification."

This extract from the opinion is quoted with approval in *Turner* v. *Ivie,* 5 Heisk., 222, 230. See, also, *Frank* v. *Frank,* 120 Tenn., 585, 111 S. W., 1119.

This rule, like every other rule adopted by courts for the construction of wills, as has been pointed out above, yields to any other expression contained in the will which makes it apparent that it was the intention of the testator to give the terms a more extended signification, and it is contended by the complainants in case No. 442 that such expressions, are to be found in the will.

To this we are unable to agree. On the contrary, we think it clear from the context of the will that Dr. Hogatt intended these words to be taken in their ordinary sense. In the same sentence wherein they appear he speaks of the death of Emily Gentry without either children or grandchildren, and immediately thereafter describes the beneficiaries under the limitation

Hoggatt v. Clopton.

over as the children of John H. Clopton, deceased, etc. It is not reasonable to imagine that the testator, having grandchildren specifically in mind with respect to his foster daughter Emily, and having revealed that intention by the express use of the word "grandchildren," immediately thereafter uses the word "children" in the sense of including both children and grandchildren. Moreover, the use of the words "then living" is indicative of his belief that, if Emily should die, under the conditions referred to, on the happening of that event, in all probability, one or more of his young nephews would be still living, and this has proved to be the fact. The designation of the "children of John H. Clopton, deceased, who may be then living," specifically excludes any other person not embraced in that class. This is the uniform holding of the Tennessee cases.

It results, therefore, that the decrees of the court of civil appeals, affirming the chancellor, are in all respects affirmed.