Balch *v.* Johnson.

---

BALCH   *v.*   JOHNSON.

*(Nashville.    January 19, 1901.)*

1. ADOPTION.   *Adopted child is not a "bodily heir" of the adopting parent.*

   An adopted child does not take under a deed to the "bodily heirs" of the adopting parent.   *(Post, p. 253.)*

2. SAME.   *Married woman may join her husband in adoption of child.*

   A married woman, acting conjointly with her husband, may validly adopt a child.   *(Post, pp. 254–256.)*

   Code construed: § 5409 (S.); § 4388 (M. & V.); § 3643 (T. & S.).

3. DEED.   *Bodily heirs.*

   A deed that conveys real estate to a party and his "bodily heirs" creates an estate tail, which is converted by statute into a fee.   *(Post, p. 253.)*

   Case cited: Middleton *v.* Smith, 1 Cold., 144.

4. SAME.   *Creates a vested, transmissible remainder, when.*

   A deed that conveys real estate to a wife for life, with remainder to the "bodily heirs" of the husband and a step-child by name, creates in the latter a vested, transmissible remainder, which opens up to let in after-born "bodily heirs" of the husband.   *(Post, p. 254.)*

   Cases cited: Bridgewater *v.* Gordon, 2 Sneed, 5; Harris *v.* Alderson, 4 Sneed, 250; McClung *v.* McMillan, 1 Heis., 655; Cathy *v.* Cathy, 9 Hum., 470; Puryear *v.* Edmundson, 4 Heis., 43; Whitman *v.* Young, 1 Tenn. Chy., 586.

5. CODE.   *Construction of.*

   In construing the provisions of the Code the original statutes from which it was compiled may be looked to, and it is expressly provided therein that "words importing the masculine gender include the feminine and neuter."   *(Post, pp. 255, 256.)*

   Code construed: § 62 (S.); § 48 (M. & V.); § 50 (T. & S.).

Balch *v.* Johnson.

Cases cited: Bates *v.* Sullivan, 3 Head, 633; Tennessee Hospital
  *v.* Fuqua, 1 Lea, 611; Turnpike Co. *v.* Davidson County, 14
  Lea, 73.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County.
H. H. Cook, Ch.

Noah W. Cooper for Balch.

James Trimble and Hamilton Parks for John-
son.

Beard, J. This cause involves a question as
to the ownership of a house and lot in the town
of Goodlettsville. On the nineteenth of May, 1866,
the then owner of this property, one Cummings,
conveyed it by deed to Julia Johnson, wife of
Andrew Johnson, for life, with remainder over,
in the following terms: "To Mrs. Julia Johnson,
wife of Andrew Johnson, Jr., during her life-
time, and at her death to the bodily heirs of
said Andrew Johnson, including Ellen Evers, step-
daughter of Andrew Johnson, Jr.," etc.

The Ellen Evers mentioned in this clause was
a daughter of the conveyee Julia by a former
marriage, who, though then living, died subse-
quently, while still young, without issue and in-
testate. After her death Andrew Johnson and

Julia, his wife, made application to the County Court of Davidson County for permission to adopt the complainant, Annitta, as their child, and by a judgment of that Court, duly entered, this application was granted. No question is now made upon this proceeding. It is conceded to have conformed to the statute providing for adoption, and to have created the legal relation of an adopting father and adopted child as between Andrew Johnson and Annitta. It is insisted, however, by the defendants that it had no such effect as between Julia Johnson and Annitta.

In 1884 Julia Johnson died, having never had born to her any other child than Ellen. After the death of Julia, Andrew, her surviving husband, joining with one Bradley, a surviving brother of Julia, executed and delivered a deed to the defendant, Josephine Johnson, by which they conveyed, or assumed to convey, to her the property in question. Under this deed the conveyee entered into and was holding possession at the time of the institution of this suit. The complainant, Annitta, claiming ownership, filed the present bill, asking that this deed be canceled as a cloud upon her title, and that she be placed in possession of the house and lot.

This claim of complainant is rested upon two grounds. First, that as the result of the adoption proceedings she was placed in the class of remaindermen provided for in the Cummings deed—

that is, she had become a "bodily heir" of Andrew Johnson, and being the only such heir, took the whole estate at the death of Julia, and, if wrong in this, then, second, she insists that this deed created in Ella Evers a vested, transmissible remainder interest, which, when she died intestate and without issue, passed to her mother, Julia, and upon the death of the latter to complainant as her child and heir by adoption.

These claims are controverted by the defendant as unsound in law, and, in addition, they plead that in a former suit instituted in a Court of competent jurisdiction, to which complainant, Annitta, was a party, and in which the same questions were presented as in the present bill, it was decreed complainant had no interest in this property, and that decree is relied upon as an estoppel in this case. Adverse possession of seven years is also set up as a defense.

In the progress of the cause a jury was demanded, and issues were prepared, but the Chancellor refused a jury and dismissed the bill upon two grounds. First, that complainant, Annitta, took nothing under the deed, as she was not a bodily heir of Andrew Johnson, and, second, that she took nothing by descent from Julia Johnson, because the latter, being a married woman, lacked legal capacity to avail herself of our statute providing for adoption. From this action the complainant appealed. The Court of Chancery Appeals

disagreeing with the Chancellor as to the latter ground, reversed his decree of dismissal and has remanded the case in order to a trial of the issues raised by the plea of *res adjudicata.*

The decree of the latter Court is now complained of by the defendant.

We are satisfied that complainant, Annitta, does not fall within the class of remaindermen provided for in the Cummings deed. The effect of the act of adoption, so far as Andrew Johnson and Annitta are concerned, was to confer upon her "all the privileges of a legitimate child," so far as he was concerned, "with capacity to inherit and succeed" to his real and personal estate as heir and next of kin, but it did not, and, in the nature of things could not, make her a "bodily heir." These terms, thus used in the deed, are the exact equivalent of the words "heirs of the body," and have been held to make an estate tail, which under the statute is converted into an estate in fee. *Middleton* v. *Smith,* 1 Cold., 144. As was said in *Commonwealth* v. *Nancrede,* 8 Casey (Pa.), 389, "giving an adopted son a right to inherit does not make him a son in fact, and he is so regarded in law only to give the right to inherit;" or as the Court said in *Shafer* v. *Enew,* 54 Pa., 304, "the right to inherit from the adopting parent is made complete, but the identity of the child remains. One adopted has the right of a child without being

a child." So in the latter case it was held that adopted children could not take under a devise to trustees for the sole and separate use of a married woman for life, and on her death the property to be conveyed to her children and the heirs of her children forever. Like limitations have been imposed upon the rights of children by adoption in *Russell* · v. *Russell,* 84 Ala., 48; *Bondlear* v. *Bondlear,* 112 Mass., 184; *Wyeth* v. *Stone,* 144 Mass., 441; *Jenkins* v. *Jenkins,* 64 N. H., 407. All these cases involved questions very similar to the one at bar.

2. We are equally satisfied that the deed created a vested, transmissible remainder in Ellen Evers, which, by operation of law, would open up so as to let in after born "bodily heirs" of Andrew Johnson, Jr. (Tiedeman on Real Prop., Sec. 402; Wash. on Real Prop., Vol. 2, p. 511; *Bridge-water* v. *Gordon,* 2 Sneed, 5; *Harris* v. *Alderson,* 4 Sneed, 250; *McClung* v. *McMillan,* 1 Heis., 655; *Cathy* v. *Cathy,* 9 Hum., 470; *Puryear* v. *Edmondson,* 4 Heis., 43; *Whitman* v. *Young,* 1 Tenn. Chy., 586; *Havergal* v. *Harrison,* 7 Beavan, 49), and that upon the death of Ellen intestate and without issue, and also without brothers and sis-ters or their issue, her interest in the property passed to her mother, and upon the latter's death, under the laws of descent, to complainant, Annitta, if as a matter of law she was adopted by Julia Johnson. The question then is, under our statute,

Balch *v.* Johnson.

Can a married woman, joining with her husband, legally adopt a child?

The (Shannon's) Code, § 5409, providing for adoption, is as follows: "Any person wishing to adopt another as his child, shall apply by petition, . . . setting forth the reasons therefor, and the terms of the aforesaid adoption." This section is taken from Section 2 of Chapter 338 of the Acts of 1851-52, in which it is provided that the County or Circuit Courts "shall have concurrent jurisdiction and power to authorize any person to adopt any child or children as their own, upon application or petition."

In the original Act, as well as in the Code section, it will be observed that this right to resort to the Courts for the purpose of being empowered to adopt another is conferred on "any person." Under the broad power thus given no reason in public policy, or resting on any sound rule of construction, has been suggested why a married woman, acting conjointly with her husband, should be deprived of the benefit of this provision. It is true that in the Code the masculine pronoun "his" is used, but we do not think that by so doing the Legislature intended to make a departure from the liberal scheme provided in the original Act, within the general and literal terms of which married women were included.

Not only is it well settled that in construing the sections of the Code the original Acts from

which these sections are taken may be looked to for guidance (*Bates* v. *Sullivan,* 3 Head, 633; *Tennessee Hospital* v. *Fuqua,* 1 Lea, 611; *White's Creek Turnpike Co.* v. *Davidson County,* 14 Lea, 73), but it is expressly provided that "words importing the masculine gender include the feminine and neuter." Chap. 1, Art. 3, Sec. 62 of the (Shannon's) Code.

In addition, under such a construction, a wise policy is subserved. The purpose of the statute was to give the sanction of the law to the formation of new family relations between persons not necessarily of the same blood, in which the interests as well as the feelings of the husband and wife are intimately involved, and there is therefore manifest propriety in the wife uniting with her husband, as by so doing the adopted child is made to assume the same relation to her as to her husband, and occupies, "in a general sense, the same position in the family which it would if it were the natural child of both, born in lawful wedlock." This view, in construing statutes very similar, has been expressed by the Supreme Court of Indiana in *King* v. *Davis,* 87 Ind., 590; *Markam* v. *Krauss,* 133 Ind., 294, and by that of California in *Estate of Williams,* 102 Cal., 70.

We therefore agree with the Court of Chancery Appeals in its conclusion that the effect of the adoption proceedings instituted by Mr. and Mrs.

Balch *v.* Johnson.

Johnson was to make the complainant, Annitta, for the purpose of inheritance form them, the child of each and both, and that upon the death of Andrew Johnson, "without bodily heirs," she be- came entitled to the whole estate. This being so, it follows that she has a right to maintain this bill, unless it be that she is estopped by the decree set up as a bar against her by the defendants, or is precluded by some other act which would constitute a sufficient defense thereto. These matters of defense the parties have a right to have submitted to a jury, as was demanded in the Court below, upon issues properly framed.

To this end the cause was remanded by the Court of Chancery Appeals, and the decree of that Court is in all things affirmed.