EDWARD SCRUGGS *et ux. v.* MAYBERRY *et al.* \*

*(Nashville,* December Term, 1915.*)*

1. WILLS. Construction. Estates created.

A will devising land to the son without mention of heirs or children or character of estate is a direct devise in fee. (*Post, pp.* 595, 596.)

Cases cited and approved: Middleton v. Smith, 41 Tenn., 144; Kirk v. Furgerson, 46 Tenn., 479; Wynne v. Wynne, 56 Tenn., 308; Frank v. Frank, 120 Tenn., 569; Hatzenberger v. Weaver, 110 Tenn., 620; Speight v. Askins , 118 Tenn., 749.

Codes cited and construed: Sec. 5, ch. 22 (1784); Sec. 3673 (S.).

2. WILLS. Construction. Estates created.

A will devising lands to the wife during her life and on her death to the son and the heirs of his body, but if he should die without heirs, to his sister, and the heirs of her body, is a direct devise in fee to the son, since at common law such a devise would be an estate tail, and under Shannon's Code, sec. 3673, all such estates are made estates in fee simple. (*Post, pp.* 595, 596.)

3. WILLS. Construction. Estates created. Limitations.

Where a devise of a fee simple is followed by condition that if the devisee should die without heirs the land should go to his sister, it is not impaired by such limitation where the devisee survives the testator, since, to invoke the limitation, the devisee must die before the testator's death. (*Post, pp.* 595, 596.)

4. WILLS. Construction. Estates created..

Where a devise of the fee is followed by a devise over in case the devisee dies without issue or without children, or without heirs of the body, to invoke the limitation, the death of the devisee must occur prior to that of the testator. (*Post, pp.* 596, 597.)

Cases cited and distinguished: Meacham v. Graham, 98 Tenn., 190; Vaughn v. Cator, 85 Tenn., 302.

---

\*Upon the question of effect of conveyance by husband to wife as creating separate estate, see comprehensive note in 69 L. R. A. 370; and as to sale of expectancy by prospective heir, see note in 25 L. R. A. (N. S), 436.

Scruggs v. Mayberry.

5. **WILLS. Construction. Conflict in rules.**

The rule (Shannon's Code, sec. 3675) that where a devise of the fee is followed by devise over if the devisee dies without issue, to invoke the limitation the devisee's death must occur prior to that of the testator, and the rule that if a life estate is granted with unlimited power of disposition of the whole estate and remainder created in the same property, the latter is void, are not in conflict. (*Post, p.* 597.)

Case cited and disapproved: Frank v. Frank, 120 Tenn., 569.

6. **WILLS. Construction. Estates created. Power of disposition.**

Powers merely incidental and to be inferred from the fact of ownership are not the unlimited or absolute power of disposition which, if given to a life tenant, makes a subsequent remainder void, but such absolute power must be given in express terms or impliedly by added words. (*Post, pp.* 597-600.)

Case cited and approved: Overton v. Lea, 108 Tenn., 505.

7. **WILLS. Estates created. Particular words.**

The rule that where a devise of the fee is followed by a devise over if the devisee dies without issue, to invoke the second devise the devisee must predecease the testator, applies even where at the time of making the will the devisee was only eight years old, and the testator died within one year thereafter. (*Post, p.* 600.)

Case cited and approved: Frank v. Frank, 120 Tenn., 575.

8. **WILLS. Estates created. Devises over.**

Where the devise is to a son and to his children, although they are not yet in being and may never be, it is the preferred construction that the son takes the life estate with remainder to the children. (*Post, pp.* 600, 601.)

Cases cited and approved: Turner v. Ivie, 52 Tenn., 222; Beecher v. Hicks, 75 Tenn., 207; Blackburn v. Blackburn, 109 Tenn., 675.

9. **WILLS. Estates created. Remainders.**

The devise to a son and to his children, and if he dies without children then to his sister and her children, creates a life es-

tate in the son with remainder to the children, and at birth of a child the remainder would vest, subject to open and let in after-born children. (*Post, pp.* 600, 601.)

10. **WILLS. Construction. Technical words. "Heirs of the body."**
When technical words are used in a will they are presumed to be used in a technical sense, and before another meaning can be attached to them that meaning must clearly appear, so that unless it clearly appears that the testator used the words "heirs of the body" as meaning childen, they will not be so construed. (*Post, pp.* 601-603.)

Cases cited and approved: Loving v. Hunter, 16 Tenn., 4; Settle v. Settle, 29 Tenn., 474; Vaden v. Hance, 38 Tenn., 300; Clopton v. Clopton, 49 Tenn., 31; Owen v. Hancock, 38 Tenn., 563; Pierce v. Ridley, 60 Tenn., 145; Middleton v. Smith, 41 Tenn., 144; Kirk v. Furgerson, 46 Tenn., 479; Skillin v. Lloyd, 16 Tenn., 564; Balch v. Johnson, 106 Tenn., 249; Bingham v. Weller, 113 Tenn., 70; Ward v. Saunders, 35 Tenn., 387; Wood v. Polk, 59 Tenn., 220; Linn v. Alexander, 59 Pa., 43; Pearsol v. Maxwell (C. C.), 68 Fed., 513; Lanham v. Wilson (Ky.), 22 S. W., 438; Wilkerson v. Clark, 80 Ga., 367; Brant v. Gelston (N. Y.), 2 John Cas., 384; Shuttle & Weaver Land Imp. Co. v. Barker, 178 Ala., 366.

11. **WILLS. Construction. Technical words. Rules of property.**
Since Shannon's Code, sec. 3673, making all estates tail fee-simple estates, creates a rule of property, its application ought not to be rendered difficult by a latitudinarian construction of familiar words, the technical significance of which uniformly creates an estate tail at common law. (*Post, pp.* 603, 604.)

Code cited and construed: Sec. 3673 (S.).

12. **WILLS. Construction. Particular words.**
Provisions of will *held* not to indicate that the words "heirs of the body" were intended to be used in other than the technical significance. (*Post, pp.* 603, 604.)

13. **HUSBAND AND WIFE. Deeds. Effect.**
A deed made directly by the husband to the wife creates in her a separate estate. (*Post, pp.* 604, 605.)

Scruggs v. Mayberry.

Cases cited and approved: Barnham v. Le Master, 110 Tenn., 638; Funkhouser v. Fowler, 117 Tenn., 539; Ferguson v. Booth, 128 Tenn., 259; Travis v. Sitz, 185 S. W., 1075.

14. **HUSBAND AND WIFE. Perpetuities. Deeds. Effect.**

Where the husband conveyed land to the wife, the deed providing that neither should dispose of it during the life of the other, but that the husband should be entitled to control and manage it, the husband became the wife's trustee for her separate estate, such a restraint on the power of alienation being void if the estate is general, but not if the estate is the separate one of the wife. (*Post, pp.* 604, 605.)

15. **HUSBAND AND WIFE. Deeds. Effect.**

Under a deed from the husband to the wife, he to retain the use and possession of the property, but neither to have the right to dispose of it, and in the event of his death, the wife to control and manage the property, and in the event of her death after the grantor's death, the property to be divided among the children, and in the event of her death during the life of the grantor, the conveyance to be void, the wife has an estate only during the joint lives of herself and husband, and the interest of the children under the deed is contingent only. (*Post, pp.* 605, 607.)

16. **HUSBAND AND WIFE. Deeds. Effect.**

Such a deed conveys an estate *in praesenti*, the interest of the wife being immediate. (*Post, pp.* 605-607.)

17. **DIVORCE. Decree. Vested and contingent interests.**

A decree in a divorce case operating as a deed and describing a vested remainder interest in lands conveys nothing where the sole interest is a contingent remainder, and is not cured by a further description including any other property or estate of the defendant. (*Post, pp.* 607, 608.)

Case cited and approved: Taylor v. Swafford, 122 Tenn., 303.

18. **DIVORCE. Decree. Vested and contingent interests.**

A decree attempting to convey a contingent remainder is of no effects, since an instrument purporting to convey such an interest amounts only to an agreement to convey which may be enforced when the contingency happens. (*Post, pp.* 607, 608.)

19. **PARTIES. Joinder. Antagonistic interests.**

That a husband and wife have under a will various interests in property, the extent of which in either of them depends upon his survival of the other, does not make them antagonistic so as to make their joinder as plaintiffs improper. (*Post, p.* 608.)

Case cited and approved:   Bigley v. Watson, 98 Tenn., 353.

20. **QUIETING TITLE. Right to remedy. Title of plaintiff.**

Where the husband conveyed land to the wife subject to divestiture should she predecease him, and to the limitation that he should control and use the land during his life, they were both proper parties to sue to remove a cloud from the title, the equitable title being in her and the legal in him. (*Post, p.* 608.)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —John Allison, Chancellor.

J. T. Miller, H. S. Stokes and T. T. McCarley, for appellants.

Pitts & McConnico, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

William Scruggs died in 1859, after having made his will, which, so far as necessary to quote, reads:

"I give  .  .  .  to my wife, Margaret, one-half of my landed estate during her natural life.  .  .  .

The half of land not given to my wife, I give to Edward
Scruggs, son of William and wife Sarah G.,  .   .   .
and the part my wife has while she lives, after her
death, to him, said Edward and the heirs of his body,
and if he should die without heirs, then the land I have
given him to go to his sister, Lucinda, and her heirs,
that is, the heirs of her body.''

In the year 1878 Edward Scruggs executed a deed,
which, so far as necessary to reproduce, is as follows:

''For and in consideration of the love and affection
I have for my wife, Alice Scruggs  .   .   .   and the
additional considerations of $1.00 to me, Edward
Scruggs, paid, I have granted and conveyed to my wife,
Alice Scruggs, the following real estate [describing a
tract of 300 acres].  I likewise grant and convey to my
wife, Alice Scruggs, a tract of fifty-four acres lying
in Williamson county.  .   .   .   Likewise I grant and
convey to my wife, Alice my remainder right and title
to 354 acres.  .   .   .   Mrs. Margaret Bright [for-
merly Margaret Scruggs, widow of  testator  in the
above-mentioned will] has a life estate in both these
tracts.  I, Edward, have the remainder title which is
hereby conveyed to  my  wife,  Alice.  .   .   .   This
conveyance is made to my wife, Alice, with the follow-
ing limitations:  I, Edward, am to retain the use and
possession of said property, the right and power to cul-
tivate, rent, or lease said property in such manner and
for such uses and purposes as I may think proper, but
neither Alice or myself shall have the right to sell the
said property.  In the event of my death, my wife

surviving, then she, the said Alice, is to take the control and management of said property, and apply the usufruct, rents, crops, etc., to her and my children's support and maintenance. In the event of Alice's death, I being dead, then the property thus conveyed to be divided equally among all my children, and their heirs. In the event of my wife becoming a widow and afterwards marrying, then all the property thus conveyed shall belong [to] and be divided among my children and their representatives. In the event of my wife dying leaving me surviving, then this conveyance shall be void and the title thus conveyed shall reinvest in [me] the said Edward Scruggs.''

The bill alleges that complainant Edward Scruggs, the maker of the deed just copied, has four living children, that one of these is Edward G. Scruggs, and that the wife of the latter by proceedings in the Third circuit court of Davidson county, had obtained a divorce from him, and had secured a decree for alimony. So much of this decree as should be recited reads:

''That the defendant Edward G. Scruggs is the owner of a one-fourth vested remainder interest in a tract of land (describing the Scruggs' lands); . . . that the petitioner should recover of the defendant alimony and (the court) allows as alimony in this case a one-half of the vested remainder interest owned by the said defendant Edward G. Scruggs in the above-described tract of land, and a one-half in any other property or estate of the defendant. It is by the court

ordered, adjudged, and decreed that the said one-half interest in the aforesaid land of the said Edward G. Scruggs, and one-eighth in the entire estate, subject to the life estate of the father, be and the same is hereby divested out of the said Edward G. Scruggs, and vested in Mrs. Katherine Reid Scruggs, in fee simple to her sole and separate use, and free from the debts, contracts, or control of any husband she may ever have.''

There was in said case also a fee of $600 allowed to Mr. Harry S. Stokes, the solicitor for Mrs. Katherine Reid Scruggs, and it was—

''therefore adjudged that the said Harry S. Stokes have and recover the sum of $600 of the defendant Edward G. Scruggs, and to secure and make certain the payment of said sum of money, the amount is declared a lien upon the remaining one-eighth interest of the said Edward G. Scruggs, in said property, and will so remain until the same is paid and discharged.''

So it is that the Third circuit court of Davidson county decreed absolutely to the wife of Edward G. Scruggs one undivided half of what she claims is, or was, his undivided one-fourth vested interest in remainder in the lands described dependent on the life of his father, and decreed a lien in favor of her solicitor for $600 on the other half. She claims that his interest under the deed made by his father was a vested remainder in an undivided one-fourth of the land.

The complainants in the present bill, Edward Scruggs and wife, Alice, the father and mother of the

135 Tenn.—38

defendant Edward G. Scruggs, claim in the bill that the legal effect of the deed above mentioned—

"was to vest the title, right of possession, and control of said land in the said Alice for her life only upon the condition and contingency that she should survive the grantor, complainant Edward Scruggs; and that no title or interest of the children or heirs of complainant Edward Scruggs in said land could vest in them, except upon the same condition and contingency, that is, the death of complainant Edward in the lifetime of complainant Alice; and such contingency not yet having happened, that no interest has vested in said children or heirs, and none may ever vest under said deed."

After setting out the decree for divorce and alimony above mentioned, it was charged that Edward G. Scruggs was never at any time vested with any interest in the said lands, in any form whatsoever, and that the decree for alimony created a cloud on complainants' title; that defendant Katherine Reid Scruggs and her representatives are threatening to sell or mortgage the supposed one-eighth interest, and thus further complicate matters. It was therefore prayed that the will of William Scruggs, and the deed made by Edward Scruggs, be construed, the rights of the parties declared, and that it be adjudged that Katherine Reid Scruggs acquired no interest in the land by the clause referred to, that that decree be declared void, and removed as a cloud, and that on final hearing she be perpetually enjoined from claiming any interest in the land mentioned under the decree above referred to.

The defendant Katherine Reid Scruggs and Harry S. Stokes filed a demurrer to the bill, and upon that being overruled, answered, insisting upon their construction of the deed of Edward Scruggs which we have already stated, and in addition that even under the will of William Scruggs, the said Edward took only a life estate, with the remainder to his children, and that under that instrument Edward G. Scruggs was entitled to a vested undivided one-fourth interest in remainder in the lands.

The chancellor held against both contentions of the defendants Katherine Reid Scruggs and Mr. Harry S. Stokes, and decreed in favor of the complainant. An appeal was prosecuted to the court of civil appeals, and there the decree of the chancellor was affirmed. The case was then brought to this court under the writ of *certiorari.*

We are of opinion that under the will of William Scruggs there was devised to Edward Scruggs, directly, in fee the half of the lands not incumbered by the life estate of the wife. The same result must follow as to the remainder in the half interest incumbered by the wife's life estate, if the words "heirs of the body" occurring in that devise be technically construed, since a devise to A. and his bodily heirs would create an estate tail at common law (*Middleton* v. *Smith,* 1 Cold. [41 Tenn.], 144; *Kirk* v. *Furgerson,* 6 Cold. [46 Tenn.], 479; *Wynne* v. *Wynne,* 9 Heisk. [56 Tenn.], 308), and by our statute (1784, chapter 22, sec. 5; Shan. Code, sec. 3673; *Speight* v. *Askins,* 118 Tenn., 749, 102 S. W., 74),

all such estates are turned into estates in fee simple. Nor is the fee-simple estate in the present instance, if it be such, impaired by the clause, "and if he should die without heirs," then to Lucinda, since under the rule of construction and of property that obtains in this State, these words would import a death in the lifetime of the testator (*Frank* v. *Frank,* 120 Tenn., 569, 111 S. W., 1119; *Katzenberger* v. *Weaver,* 110 Tenn., 620, 75 S. W., 937), and it appears that Edward Scruggs survived the testator.

It is insisted by defendants, in opposition to this construction, that the words, "heirs of the body" should be interpreted to mean "children." Let this be assumed, would the result be changed? The language of the will under consideration in *Frank* v. *Frank,* supra, was:

"Should any of my sons die without issue, his or their share shall also revert to my children then living, their heirs and assigns forever."

The court held that this language fell within the rule quoted from Jarman on Wills:

"If there is an immediate gift to A., and a gift over in case of his death, or any similar expression implying the death to be a contingent event, the gift over will take effect only in event of A's death before the testator."

In *Katzenberger* v. *Weaver,* supra, it was held that the following language was covered by the rule:

"In case any of my children herein named, shall die leaving a child or children at the time of his or her death," then over to other persons indicated.

In *Meacham* v. *Graham,* 98 Tenn., 190, 196, 39 S. W., 12, 13, the language of the will was:

"In the event of her death without living children," then over.

In *Vaughn* v. *Cator,* 85 Tenn., 302, 2 S. W., 262, the language was:

"In the event Basil Smith dies without lawful issue," then to others.

In each of these cases it was held that the words used meant death before the testator.

It is next insisted that the rule laid down by Shan. Code, section 3675, controls instead of the decisions cited, but the same point was made in *Frank* v. *Frank,* and disallowed. 120 Tenn., 569, 576, 577, 111 S. W., 1119.

It is insisted that the rule cannot apply unless there be an unlimited power of disposition given the first taker. There is no necessary connection between the two rules. It is claimed that such relation is fully shown in *Meacham* v. *Graham,* and *Vaughn* v. *Cator,* and necessarily implied in *Katzenberger* v. *Weaver* and *Frank* v. *Frank.* This is a misconception of those cases. The one rule is that if, for example, a life estate be granted to A., with unlimited power of disposition of the whole estate, and in the same instrument there be granted to another a remainder over in the same property, the remainder is void, since the unlimited power of disposition vested in the first taker enables him to destroy the remainder. Therefore it is regarded as futile. The law will not recognize vain

things, and so declares that to the first taker belongs the whole estate. The other rule has just been stated. Comparing them it is seen there is no necessary connection. It is true that the facts in *Meacham* v. *Graham* furnished a basis for the application of both rules. The chancellor decided in favor of the daughter's ownership under the rule we have quoted from Jarman (98 Tenn., 207, 39 S. W. 12), while the court of chancery appeals reached the same result on the ground of an absolute power of disposition vested in the daughter (98 Tenn., 201, 39 S. W., 12). This court said on the page last cited that the chancellor and the court of chancery appeals had arrived at the same result, "by different holdings, but not, as we think, by necessarily inconsistent or contrary theories, under the special facts of this case." It is true that a statement in the opinion on pages 207, 208, combining the two rules, and also a third in one sentence, tends to confuse the matter, and to obscure what had been previously stated on the subject of two of the rules separately at pages 201, 202, and the second paragraph on page 207, but an examination of the authorities cited will show that the first five of them applied solely to the rule in respect of dying before the testator, the next two solely to the absolute power of disposition, and the last one to the rule against any presumption to cut down by a subsequent provision a fee already given by a prior one. So it is, all three rules were united in the one sentence, and the authorities for each cited in the aggregate without showing how they applied separately to the dif-

ferent elements contained in the sentence. The sentence does not read clearly, and there was evidently something omitted from it in the printing. Certain it is, the rules are quite distinct. In *Vaughn* v. *Cator*, there was no power of disposition in terms given to Basil Smith, or other power except such as is to be inferred from the mere fact of ownership and that is not the kind of power contemplated by the rule as to absolute or unlimited power of disposition. Such absolute power must be given in express terms or impliedly by added words. *Overton* v. *Lea*, 108 Tenn., 505, 545, 68 S. W., 250, and authorities cited. What is said on the subject in the opinion in *Vaughn* v. *Cator*, was only *arguendo* in the way of demonstrating the inconvenience of a construction that would deny Basil Smith the absolute ownership if he survived the testator, since under a contrary construction it could not be determined until his death whether there would be lawful issue of him, and during perhaps a long life the possible ultimate destination of the property would be unknown, and in the meantime Basil Smith as owner could sell it. In the other two cases (*Katzenberger* v. *Weaver* and *Frank* v. *Frank),* not only was there no conferment of an unlimited or absolute power of disposition, in express terms, but no superadded words from which the power had to be necessarily inferred. We have seen that the power of disposition to be implied merely from ownership has no relation to the rule. We may add that from the discussion in *Katzenberger* v. *Weaver,* of the rule quoted from Jarman

on Wills, there was no inkling of any kinship to it, near or remote, of the rule as to absolute power of disposition.

It is also claimed that the rule of *Frank* v. *Frank*, and kindred cases, cannot apply because at the date of the will Edward Scruggs was only eight years old, while William Scruggs was within a year of his death, and it cannot be supposed that he entertained the thought that he would survive the boy, or even that he would live long enough to see Edward married and the father of children. But there is no evidence as to the age of the testator, or that he had any forecast, or prevision of his death to happen a year after the making of his will. For aught we know he may have been, when the will was executed, a man in his twenties or thirties and in perfect health. And see *Frank* v. *Frank*, 120 Tenn. at page 575, 111 S. W., 1119, discouraging inquiries of such a nature.

But it is urged that if the term "heirs of the body" should be construed to mean children, then the devise would be to Edward Scruggs and his children, and that under such a devise Edward would take a life estate with remainder to his children, although they were not yet in being, and might never be. Such is the preferred, and we may say is practically the construction given in this State when the devise is to one and his or her children, where there are yet no children in existence. *Turner* v. *Ivie*, 5 Heisk. (52 Tenn.), 222; *Beecher* v. *Hicks*, 7 Lea (75 Tenn.), 207, 212; *Blackburn* v. *Blackburn*, 109 Tenn., 675, 73 S. W., 109. But con-

ceding this, will the situation under the present will be in anywise different? If the devise should be written, "to William Scruggs and his children, and if he die without children, then to his sister Lucinda, and her children," still the words "if he die" must mean under the rule "if he die during the life of the testator." On such death the title would go over as stated. If he survived the testator the devise would remain as written to William Scruggs and his children, which would be construed to William for life with remainder to his children, and on the birth of a child the remainder would vest, subject to open and let in after-born children. And this is the case before us, it appearing as already stated that four children have been born to complainants William Scruggs and his wife, Alice, all of whom are living. One of these is Edward G. Scruggs, whose interest in this property, it is claimed, was decreed to his wife in the divorce proceeding.

So it becomes important to determine whether the words "heirs of the body" in the will of William Scruggs should be held to mean children.

It is true that these words "heirs of the body" have in this State several times been held equivalent to the term "children." In the first of these cases to which our attention has been drawn (*Loving* v. *Hunter*, 8 Yerg. [16 Tenn.], 4), this interpretation was the result of special language contained in the will, influenced to some degree likewise by the desire of the court to take the particular case out of the rule in *Shelley's Case*, to which considerable hostility was shown. In the three

cases immediately following (*Settle* v. *Settle*, 10 Humph., 474, *Vaden* v. *Hance*, 1 Head, 300, and *Clopton* v. *Clopton*, 2 Heisk., 31, 34, 35) substantially the same language was found, that is, the determining word "lend," and these cases were all based on *Loving* v. *Hunter*. In *Owen* v. *Hancock*, 1 Head, 563-565, the language was quite special, note particularly the bottom line of page 565. In *Pierce* v. *Ridley*, 1 Baxt., 145, 25 Am. Rep., 769, the language was very special, the sons being made trustees for the "heirs of their bodies," and this was held to indicate that children were referred to. On the contrary, the technical meaning of the term has been repeatedly applied. *Middleton* v. *Smith*, 1. Cold. (41 Tenn.), 144; *Kirk* v. *Furgerson*, supra; *Skillin* v. *Lloyd*, 6 Cold., 564; *Wynne* v. *Wynne*, supra; *Balch* v. *Johnson*, 106 Tenn., 249, 61 S. W., 289; *Bingham* v. *Weller*, 113 Tenn., 70-77, 81 S. W., 843, 69 L. R. A., 370, 106 Am. St. Rep., 803; *Speight* v. *Askins*, supra. And it is held in *Ward* v. *Saunders*, 3 Sneed (35 Tenn.), 387, 389, that when the term is applied to real estate, it must be construed according to its strict legal meaning. And the rule is general when technical words are used in a will, they are presumed to be used in a technical sense, and before another meaning can be attached to them, that meaning must clearly appear, *Wood* v. *Polk*, 12 Heisk., 220, 224, 228. The same principle has been applied in other jurisdictions to the words we now have under examination. *Linn* v. *Alexander*, 59 Pa., 43; *Pearsol* v. *Maxwell* (C. C.), 68 Fed., 513, 514; *Lanham* v. *Wilson* (Ky), 22 S. W., 438; *Wil-*

*kerson* v. *Clark,* 80 Ga., 367, 7 S. E., 319, 12 Am. St. Rep., 258; *Brant* v. *Gelston* (N. Y.), 2 John. Cas., 384; *Shuttle & Weaver Land Imp. Co.* v. *Barker,* 178 Ala., 366, 60 South., 157, 158.

A special reason applying in this State in favor of strict construction of these words where realty is involved arises out of our statute above referred to reproduced in Shan. Code, section 3673, which turns estates tail into fee-simple estates. This statute creates a rule of property and its application ought not to be rendered difficult by a latitudinarian construction of familiar words, the technical signification of which uniformly creates an estate tail at common law. It ought to be reasonably easy for the examiner of titles to determine when he has before him a case or instance falling under the statute. This is the dictate of public policy for the security of titles. When the effort is made to find in these words a meaning different from that technical signification, nearly always litigation arises. It is true that in some instances public policy has been compelled to give way before what seemed to the court a clear purpose of the testator to use the terms referred to in a nontechnical sense, or as meaning children. This course of construction, however, should not be too much indulged, for the reasons already stated. Now turning to the will before us, we see nothing in it sufficiently clear to overturn the true technical meaning of the terms. We are referred to a wholly distinct paragraph of the will in which it is said the testator used, with respect to certain property de-

vised to his wife, the word "heirs" in a strictly accurate way, showing that he understood its legal meaning; that he employed the same word in the next paragraph, that referred to the devisee William Scruggs in such way as to make it absurd if he intended it in its technical sense. That is to say, passing over to William Scruggs' sister Lucinda, the estate if he should die without heirs, when in law she would be his heir in case he died without children and hence she would have to die to inherit. The rule is that it is not competent, generally speaking, to construe one clause by another, especially when they relate to different subjects and are neither grammatically nor logically connected. *Wood* v. *Polk,* supra. When we refer to the paragraph itself in which the devise of land to William Scruggs is found, we there discover that he attaches the meaning of heirs of the body to the term heirs, and it is clearly perceived in the clause "then the land I have given him to go to his sister Lucinda, and her heirs that is, the heirs of her body," Reference is made to some language of the will immediately following the language we have just quoted, in which the testator devises certain slaves, but this part of the will throws no light whatever upon the meaning further than that already shown by the part of the will which we have copied, because the same words are repeated.

As to the deed: The conveyance having been made by the husband directly to the wife, it created in her a separate estate. *Barnham* v. *Le Master,* 110 Tenn., 638, 75 S. W., 1045, 69 L. R. A., 353; *Funkhouser* v.

*Fowler,* 117 Tenn., 539, 101 S. W., 769; *Ferguson* v. *Booth,* 128 Tenn., 259, 268, 269, 160, S. W., 67, Ann. Cas., 1915C, 1079. The husband by operation of law became her trustee, and the powers reserved to him must be understood in that sense, otherwise they would be repugnant to the grant, and therefore void. The absolute restraint on the power of alienation would also be void if the interest conveyed were otherwise than a separate estate. A separate estate may be so qualified, but not a general estate. *Travis* v. *Sitz* (Nashville, December term, 1915), 185 S. W., 1075.

Under a true construction of the deed, the intention was that the estate so conveyed to the wife should continue only during the joint lives of the husband and wife, pending which term he was to act as her trustee, in the manner just stated. Upon his death, prior to her own, she was to have an estate for her own life, but subject to a trust duty on her part to manage the property and apply the avails to the support of herself and the children of Edward Scruggs, burdened, however, with the condition subsequent that in case she should contract a second marriage, and should thus cease to be his widow, her estate should cease, and the land should at once be divided among his children, and that the same result should follow her death subsequent to that of her husband. It is perceived that the estate of the wife for her own life, as well as all interest of the children, hinged upon the husband dying first. In the event the wife should die first she was to have nothing save the estate first mentioned for the term of the joint

lives, and the children could take nothing at all; but the whole estate immediately upon the death of the wife would revert to the husband, Edward Scruggs, or, rather, speaking more correctly, as will be presently seen, he would be in of his original title; there being no dislodgement of it through the happening of the possible event of his dying prior to his wife. Recurring to the thought interrupted by the last clause, it is to be observed that the wife's estate for the term of her own life, and also the estate of the children, depended altogether upon the dubious event as to which would die first, the husband or the wife, and thus it is that the interests of the children were purely contingent; that is, under the terms of the deed they were to be contingent remaindermen dependent upon the coming into existence of the wife's estate for her own life, which in turn depended upon whether she should survive her husband. 4 Kent. Comm. marginal pages, 206-208. We do not think the contention a sound one, to the effect that the deed of Edward Scruggs conveyed nothing *in praesenti,* but that all of its provisions depended on his dying prior to the death of his wife. This view does not comport with the words of direct conveyance to his wife, and the reservation, so to speak, which he made as to his own control of the premises. If the intention was that nothing should pass save upon the happening of his own death, such a reservation would have been not only useless, but unaccountable. That provision occurring along with the words of direct conveyance to the wife, indicates beyond doubt, as we

think, that the maker of the deed understood he was conveying an immediate interest to his wife. That estate was of the kind we have declared, subject, however, to the condition subsequent that upon the death of the husband prior to the death of the wife, the estate for the joint life of the two should cease, and an estate for her own life should arise, as already stated.

It is apparent from the principles stated that the decree in the divorce case purporting to transfer to Mrs. Katherine Reid Scruggs a vested remainder interest in the land did not convey her anything, since a description of a vested interest will not cover a contingent one. Nor is the difficulty bridged by the language of the decree, ''and one-half in any other property or estate of the defendant.'' It is manifest that this language had no reference to the land in question, but to any other property or estate he might have. But let it be assumed that these general words applied to the contingent estate, the result would not be different, since under our authorities an instrument purporting to convey a contingent estate amounts only to an agreement to convey which may be enforced when the contingency happens and the vesting of the estate occurs. *Taylor* v. *Swafford,* 122 Tenn., 303, 307-312, 123 S. W., 350, 25 L. R. A. (N. S.), 442. It is true, as urged by counsel for the defendants, that a decree of court purporting to transfer title is equivalent to a conveyance *inter partes,* and will accordingly transmit the title; but the court has no power to make an agreement to convey for any one, so the decree was inoperative on the contingent remain-

der.   The same result must follow as to the lien attempted to be given to Mr. Stokes.   The court could not decree a lien on a thing not yet in existence.

Before closing this opinion we should refer to two of the grounds of demurrer which are relied on in the assignments of error.   One of these objects to the joint maintenance of the bill by the complainants on the grounds that their rights are antagonistic. It is clear from what has been said there is no antagonism.   The other ground is that a bill to remove a cloud cannot be maintained because the complainants are without title.   This is a mistaken view. The wife owns the estate for the joint lives of herself and husband protected by a trustee duty imposed on him for her benefit, and pending the contingency the title to the fee remains in him.   *Bigley* v. *Watson,* 14 Pickle (98 Tenn.), 353, 363-372, 39 S. W., 525, 38 L. R. A., 679.

The result is that the decree of the court of civil appeals, on the grounds herein stated, is modified and affirmed.