HILL v. MALONEY et al.—108 S. W. (2d), 791.

Eastern Section.   May 8, 1937.

Petition for Certiorari Denied by Supreme Court September 28, 1937.

Hooper, Crawford & Caraway, of Newport, for appellant.

McSween, Shepherd & Hurd, of Newport, Powers & Thornburgh, of Knoxville, and Taylor & McCanless, of Morristown, for appellee.

PORTRUM, J.  In the year 1881, W. C. Maloney, sixty-nine years of age, was a resident of Greene county, Tenn.; he was a man of wealth, which consisted of farming land, mill property, town lots, and much personal property, represented by bills and notes, live-stock, et cetera.  He was a married man and the father of ten chil-dren; three of these children were dead in the year 1881, and the date of the death of two others is not shown, but they died without issue and they may be eliminated from this controversy.  Of the four deceased children only one, Sarah Maloney Johnson, left sur-viving issue, a child by the name of Willie Johnson, who was about fourteen years of age at the time spoken of, his mother having died prior to 1881.  Therefore the said W. C. Maloney had five living children and one grandchild representing a deceased daughter, and upon his death these parties would become his next of kin and heirs at law, and in case of his intestacy succeeding to his property, sub-ject to the rights of his surviving widow.

But late in the year of 1881 the said W. C. Maloney being in fail-ing health, and in fact upon his deathbed executed his last will and testament, bearing date of December 9, 1881, and adding thereto a

codicil of December 20, 1881. He died on January 5, 1882, and in due time his will was probated and the personal estate administered by the executors named therein.

The testator made provision for his fourteen year old grandson, Willie Johnson, devising him a farm in Cocke county, Tenn., and the devisee went into possession of this farm at the time directed by the will, and possessed it until his death intestate on February 19, 1935; he was survived by his widow and certain brothers and sisters by the half blood who are parties to this proceeding. No child was ever born to Willie L. Johnson. Upon his death his administrators filed a bill in equity in the nature of an insolvency proceeding to set aside to the widow her homestead and dower and to sell the land for the payment of debts, and the balance, if any, for distribution between the heirs at law of Willie L. Johnson. During the pendency of this suit the heirs at law of W. C. Maloney, deceased, filed the present bill for partition of the land owned by the said Willie L. Johnson, deceased, among themselves as the rightful owners of the property. The complainants are the grandchildren and other remote descendants of the said William C. Maloney, and they claim the property under the provisions of the Maloney will. The widow and heirs at law of Willie L. Johnson answered the bill, denying the construction placed upon the will by the complainants and asserted ownership in the property in their own right. And as an initial claim the widow asserts the right to homestead and dower in the property even in the event that the complainant's construction of the will is the correct construction. From what has been said it is seen that the construction of this instrument will determine the issues involved in this litigation.

As stated, the testator was a man of wealth and the draft of his will was necessarily a lengthy one and is much too long to set out as a whole in this opinion; it will be treated as an appendage and referred to as such when necessary. Many of the provisions of the will will be set out herein to illustrate and reflect the holding of the court. Willie Johnson was mentioned and provided for as follows:

''I will and bequeath to my grandson Willie Johnson the following tract of land in Cocke County on south side of river beginning . . . [description omitted]. *Should the said Willie Johnson die before he obtains his majority or before children should be born to him after marriage then the land to go to my children.* . . .

''My other property consisting of notes, deeds of trust, etc., I wish divided equally between my children so as to make them all equal . . . I want Willie Johnson sent to school two years at my expense and if my executors think best send him three years and I wish him to take possession of the land I have bequeathed him when he arrives at the age of twenty.

". . . I hereby direct my executors to pay to J. B. Johnson the sum of $300 on account of Willie Johnson. . . ."

It is tacitly admitted that these provisions in behalf of Willie Johnson standing alone would require, under the authorities, that the subsequent condition, i. e., death before attaining the age of twenty-one and before children should be born to him after marriage, must happen before Johnson attained his majority, otherwise the estate becomes absolute. The rule seems to be well established, especially in Tennessee, in the construction of like provisions, but the estate fails if the devisee dies before attaining his majority provided children should not have been born to him prior to his majority. This construction is so firmly established that it may be classified as a rule of property governing title examiners in passing upon title to real estate appearing upon the public records.

In the case of Massie v. Jordan, 69 Tenn. (1 Lea), 646, the testator, after devising certain lands to his children to be equally divided among them, adds: "If either of my five youngest children should die before arriving at the age of twenty-one years, or have a lawful heir of their body, my wish is that the surviving ones shall be heirs to the one that dies, and in that way, if they die, the surviving ones or one to be sole heir." In construing this provision of the will the court said:

"It may mean that the survivor should take if either child should die before the age of twenty-one, or before having a lawful heir. It may also mean, if either child should die before arriving at the age of twenty-one, and before having a lawful heir. In the first view, the clause touching the arrival of age becomes mere surplusage, for the making the executory devise dependent upon the child dying before having a lawful heir would have answered the purpose of both contingencies. It is common learning in the construction of wills that 'or' may be changed into 'and' to carry out the testator's wishes. And the plain meaning of this will is, that the survivor shall take if a child die before arriving at age, and before having a lawful heir. Both events must happen and the child must die under age, and without having had a child, in order to divest the fee previously given."

This holding is cited and proved in the case of Harwell v. Benson, 76 Tenn. (8 Lea), 344. There the court said:

"In Massie v. Jordan, 1 Lea [646] 648, the language was: 'If either of my children die before arriving at the age of twenty-one years or (before they) have a lawful heir of their body,' my wish is that the survivor shall be heirs, etc. It was held that the death must occur before arriving at twenty-one years of age and before the birth of a child. This is well sustained by the authorities: See 2 Jarman on Wills (5 Am. ed.), p. 86. The intention of the testator in such a case is clear, that the first taker's estate shall be absolute

if he arrive at an age to dispose of the property himself, or if he die before that age he nevertheless have issue born.

"It would seem at first view that the present case is analogous in principle, but it will be seen from the volume of Jarman above referred to, page 96, that language similar to the clause now under consideration is construed differently. That is to say, a devise over upon the first taker 'dying before he arrived at twenty-one years of age, or have bodily heirs' is not to be construed in the same way as a devise over upon the first taker dying 'before he marry or have bodily heirs.'"

The court distinguishes the two cases by saying that the phrase "before he marries or have bodily heirs" conveys but one thought; a person cannot have bodily heirs before marriage, therefore the provision "before he marries" is entirely superfluous. This is not true in reference to the legatee attaining his majority, for he could have children before attaining his majority. Under this holding the court may disregard the latter portion of the condition under construction here, i. e., "after marriage . . ." which makes the condition read: "Should the said Willie Johnson die before he attains his majority or before children shall be born to him, then the land to go to my children." And the construction of this condition falls squarely in the case of Massie v. Jordan, supra. As heretofore stated, this is the accepted construction. See Pitchett on Wills, section 445; Wills, 69 C. J., pages 321-327, section 1333.

■■ Counsel insists that the accepted construction of a provision of a will must give way when from the contents of the will as a whole a different intention appears. There can be no dispute but what the intention of the testator as it appears from the instrument is controlling, and that technical construction must give way when in conflict with this manifest intent. This rule is recognized in the cases heretofore cited, and additional numerous late authorities could be added. Agreeing upon the principle stated, then there remains only the ascertainment of the intent of the testator from the four corners of his will; this intent must affirmatively appear by an unavoidable and an inescapable inference. The court is not justified in overthrowing a well-established rule of construction upon an inconclusive inference that it was the testator's intent to make a contrary disposition of his property.

The argument of counsel is that the contents of this will evidences a primary intention on the part of the testator to pass the property to his descendants of the first and succeeding generation to the exclusion of strangers; to state it differently, to keep the property in his immediate family. This issue requires an analysis of the different provisions of the will. With the issue in view, we will examine first the devise and legacy given Willie Johnson.

■ It is to be assumed that the testator was cognizant of the rule

of law, or the technical construction of the provisions of his will; this is not a weighty presumption, but the testator is entitled to have his will construed by the accepted canon of construction until he manifests an adverse intention. We quote again the condition: "Should the said Willie Johnson die before he attains his majority or before children shall be born to him . . . then the land to go to my children."

At the date of the execution of the will, the testator's children were adults, and the devisee was a child fourteen years of age; it does not seem reasonable to suppose that the testator anticipated that his children would outlive Willie Johnson and be capable of taking at the date of his decease. But, if Willie should die before reaching his majority without children born to him, then it is reasonable to suppose that the testator anticipated that his children would be alive and capable of taking. Not one of the testator's children were alive at the date of the death of Willie Johnson, and, to escape the consequences of the failure of the named parties to take because of their prior death and to hold the inheritance in the complainant, counsel insist that the word "children" means heirs. And of course heirs would include grandchildren, who are here suing. "Children" does not include grandchildren. 11 C. J., 763. As will be seen hereafter, the testator used the word "heirs" in its proper legal sense in his will, following it by a condition in favor of his children. If the court holds that he meant heirs for children in this provision of the will, then it would follow that he meant heirs when he spoke of his children in other provisions of the will unless he qualified his other use of the word "children." As heretofore quoted, he disposed of his notes, deeds of trusts, et cetera, to his children equally. For Willie Johnson he made other provisions, and there can be no doubt that he did not intend Willie Johnson to share as an heir in the distribution of his money and personal securities. In this instance the word "children" clearly excluded the grandchild Willie Johnson.

If a child had been born to Willie Johnson before his death, then the condition would have been satisfied when the base or determinable fee given him under the will would have immediately ripened into a fee-simple estate. The property could then have been diverted beyond the line of blood of the testator, and the creation of a base or determinable fee evinces no intention on the part of the testator to restrict title to the property to the line of his blood.

The court is not justified in finding a base or determinable fee created in a will, or many such fees created in the same will, to conclude that these facts evidence an intention on the part of the testator to confine the transmission of his property to his direct line. To accomplish this purpose it would be necessary to create a life estate in the first taker with a remainder in his descendants in order to effectually cut off the disposition of the estate by the first taker.

A determinable fee does not accomplish this purpose; when the conditions are met, the estate then vests a fee simple in the first taker and he may dispose of it by deed or will, or it may be taken after his death for the payment of his debts. So much of the will as has been quoted reflects no intention on the part of the testator to create a different estate from that which the law creates from the construction of the provision in favor of Willie Johnson.

The first part of the second provision of the will gives to the testator's wife all his household furniture, livestock, which he designates, farm machinery, cash, and produce from the farm, and then provides: "I also will and bequeath to her the following described boundary of land during her life and at her death it is my will that the same descend to my son John A. Maloney and to his heirs, and in the event that he should die without heirs, it is my will that the land above described be divided equally among my children. [Description omitted.]" "Children" in this provision did not mean heirs, for he had used the word in the same sentence in its legal sense, and Willie Johnson, the grandchild, had been provided for by an independent provision, which necessarily excluded him from further participation in the assets of the estate. The testator here created an estate or vested the remainder in fee in his son John A. Malony, and by an executory devise immediately following the creation of the vested estate cut it down to a base or determinable fee, so, if the devisee John A. Maloney died leaving children surviving him, then the condition was met (Harwell v. Benson, supra) and his estate became absolute, passing under his prior deed if he had disposed of it, or by will, and subject to his debts. This provision does not reflect an intention on the part of the testator to tie up the estate by passing it to his descendants.

Another provision reads: "I will and bequeath what is known as the middle place, including all between the lower place where I now live and D. H. Maloney, to whichever one of my children who may wish to inherit and live on it, and if more than one should want it, my wife is to decide who shall have the land by drawing. Should my daughter Nannie take the land under these conditions, at her death without children, the land to be divided equally among my other children."

The words "other children" here used expresses clearly the intention to exclude the grandchild Willie Johnson. The property, if chosen by the daughter Nannie, was impressed with a base fee, but, if another took it, his title was clear. This evidences no primary intention to tie up his property in the line of his own blood. By codicil he changes this provision to read:

"I desire to change so much of my will as relates to the middle place. I desire this and the Hale place as described in my will to go to my daughter Nannie Herring and the heirs of her body, and

if she should die leaving no children, it is my will that the land so bequeathed to her should be divided equally among my surviving children.''

■ In this provision he first creates a fee tail by the use of words "the heirs of her body," which by statute (Code 1932, section 7599) is converted into a fee simple (Scruggs v. Mayberry, 135 Tenn., 586, 188 S. W., 207, 211), and he immediately cuts down the fee simple to a base or determinable fee by providing ''if she should die leaving no children it is my will that that the land so bequeathed to her shall be divided equally among my surviving children.''

■ To the testator's oldest son, Hugh D. Maloney, he gave a valuable farm without qualifications, which passed to him in fee simple. It is argued that this son at the time of the execution of the will had children and the testator thought it unnecessary to qualify his estate in the land. Nevertheless, his act in giving this land in fee demonstrates that it was not in his mind to tie up his estate to the line of his blood. We find nothing in the will from which an inference could be drawn that such was the testator's purpose except the creation of three or more base or determinable fees. The determinable fees did not accomplish the purpose if such were his purpose, as in some of the valuable devises there is nothing to indicate that he entertained such a purpose for he gave the land in fee simple.

A more plausible inference to be drawn from these facts is that the testator intended to create a determinable fee and to leave it to his child to dispose of the property given him in the event he has children surviving him in the way and manner the child desires. This certainly would be a laudable parental impulse, and the court should not strike down such an intention, on the theory that the creation of this character of a fee evidence the intention to confine the transfer of the property to the blood kin of the testator. To make effectual such intention on the part of the testator, it would be necessary to destroy these determinable fees, and in effect create an estate for life in the first taker with the remainder in his descendants surviving him, and in the absence of descendants then to the testator's children. It is impossible to find anything in the will reflecting such a purpose. To establish the holding insisted upon by the complainant would require the rewriting of the will, and to require the elimination of the provision in reference to Johnson's attainment of his majority. ''All parts of will should be given effect if possible.'' Magevney v. Karsch, 167 Tenn., 32, 65 S. W. (2d), 562, 563, 92 A. L. R., 343. If a testator creates a well-established estate in real property by his will, is it permissible for the court, in construing the will, to say that he did not understand nor intend to create the estate created, but evidently intended to accomplish another purpose? If such were

permissible, the recorded evidence of title would be of little value to the profession or the public.

The following quotation is applicable here: "A special reason applying in this state in favor of strict construction of these words where realty is involved arises out of our statute above referred to reproduced in Shan. Code, section 3673, which turns estates tail into fee-simple estate. This statute creates a rule of property and its application ought not to be rendered difficult by a latitudinarian construction of familiar words, the technical significance of which uniformly creates an estate tail at common law. It ought to be reasonably easy for the examiner of title to determine when he has before him a case or instance falling under the statute. This is the dictate of public policy for the security of titles. When the effort is made to find in these words a meaning different from that technical signification, nearly always litigation arises. It is true that in some instances public policy has been compelled to give way before what seems to the court a clear purpose of the testator to use the terms referred to in a nontechnical sense, or as meaning children. This course of construction, however, should not be too much indulged, for the reasons already stated." Scruggs v. Mayberry, supra.

In the instant case the court is of the opinion that the technical construction should prevail, for there is nothing in the will to create a contrary intention. The conditions were met when Willie Johnson attained the age of his majority, and thereafter his title was absolute. This holding makes it unnecessary for the court to examine and pass upon the right of the widow to homestead and dower in an estate owned by her husband as a determinable fee. The decree of the lower court is reversed, and the case remanded to the lower court for administration under the bill to wind up the estate of Willie L. Johnson. The appellees will pay the cost of the appeal and such costs below as were incident to the establishment of their claims. The other costs will await the final administration of the estate in the lower court.

Ailor and McAmis, JJ., concur.

## Appendage

I, W. C. Maloney do hereby make and publish this as my last will and Testament, hereby revoking and making void all others by me at any time made. First I direct that my Funeral Expenses be paid immediately after my death and whatever debts I may owe, (though I do not owe any thing scarcely).

Secondly I give and bequeath to my wife Louisa everything about the house, all the milch cows and calves, 20 head of stock hogs best, one-half the bacon on hands and the two work mules, and "Old Charley." The new wagon and buggy, my half interest in new wind mill, one hundred dollars in cash, the gearing with the two mules, three hundred bushels of corn, fifty bushels of wheat and all farming

utensils, I also will and Bequeath to her the following described boundary of land during her life and at her death it is my will that the same descend to my son John A. Maloney and his Heirs and in the event he should die without children it is my will that the land above described be divided equally among my children. Beginning in the Warrensburg Road at a point where the fence below Dick Easterlys as it stood after the 1st purchase of Hale leaves the road, thence with the said fence to a Ditch, Thence with said Ditch to where it makes a turn at the interesection of another Ditch, thence with the fence above the Grave Yard to another Ditch near a wild cherry, thence up the same to a point where a line running with the Ditch under the row of peach Trees would intersect, thence from the present Draw-Bars on said Ditch with the fence a North West direction 16 poles to a stake, thence a direct line so as to intersect the River at right angles, Thence down the River with the meanders thereof including Fish Trap, to Mrs. Lucy D. Scruggs line thence up meanders of creek with the outer boundary of my land on the North side to a stake corner to David Bible, thence with his line on the Road to H. D. Maloneys corner, thence with said H. D. Maloney's line to the Warrensburg Road, thence with road to beginning, excepting and not including Fifty acres of timbered land to be laid off on East side and to include old field at Fork of road. This farm above described including house where I now live to be valued at Twelve Thousand Dollars.

I also Will and bequeath to my son John A. Maloney upon like conditions as the other bequest the Lot in Warrensburg including Store House to be valued at Nine Hundred Dollars.

I will and bequeath what is known as the middle place including all between the lower place where I now live and H. D. Maloney to whichever one of my children who may wish to inherit and live on it, and if more than one should want it my wife is to decide who shall have the land by drawing and should my daughter Nannie take the land under these conditions at her death without children, the land to be divided equally among my other children. I will and bequeath to my son H. D. Maloney the following described land. Beginning at the River where the present line fence leaves the same thence with said line fence as it now stands to the Big Road same courses continued 25 poles, thence a direct line a North East course to a point where a line running with the Road from David Bible's corner on a bank would intersect this line thence with original line S. 24 deg. E. from D. Bible's corner to a forked white oak, thence with old Reagan line to the old corner, thence with division line between J. C. Ayers and myself to mouth of the lane near River, thence up the Island so as to include timber at head of upper island to the River, thence down meanders of same to beginning. This tract to be valued

at Ten Thousand Dollars. The "Middle Tract" above described to be valued at Eight Thousand Dollars.

I will and bequeath to my Grandson Willie Johnson the following tract of land in Cocke County on South side of River Beginning at mouth of a branch opposite River orchard lower end of Hall Bottom thence running straight to mouth of a branch a south West course, thence up the road to a Gum stump on a line of Scrugg tract, thence with same to a beech on Bank of Bear Creek, thence N. 30 W. down same, thence with McMillen's conditional line to River, thence up meanders to the beginning, containing 300 acres more or less, excepting one-half interest in Mill site for my son John A. Maloney. Should the said Willie Johnson die before he attains his majority or before children should be born to him after marriage then the land to go to my children. I will and bequeath my Farm in Cocke County known as the Hale place upon the same conditions as the Middle Place, said place bounded as follows: Beginning at the River, H. D. Maloney's corner, and running with Newport Road, to where the old Mill Road leaves said Road, thence with said Mill Road to the Gum stump corner to Tract above bequeathed to Willie Johnson, thence with the lines of the same to the River, thence with meanders of same to the Beginning, being the place upon which William Hale now lives and containing about one hundred and forty acres. My intention is for this place to be attached to the Middle Place and go to whoever may take said place. My other lands in Cocke County I wish divided equally among the owners of the three Farms above described. The Hale Place to be valued at Fifteen Hundred Dollars. I wish my House and Lot in Greenville, the Shaw Tract and the Mountain land sold or disposed of as my Executors may think best. The little tract or boundary of land I own on the top of Birds Hill I want to go to the owners of the three Farms equally for the purpose of getting limestone rock. My other property consisting of notes, deeds of trust &c I wish divided equally between my children so as to make them all equal. I want Iron Pailings placed around the graves on the Hill and the graves near my house of my children. I want Willie Johnson sent to school two years at my expense and if my Ex's think best send him three years and I wish him to take possession of the land I have bequeathed him when he arrives at the age of Twenty.

Lastly I do hereby nominate and appoint my two sons, H. D. Maloney and John A. Maloney, my Executors and I do not wish or require them to give any Bond. I hereby direct my Executors to pay to J. B. Johnson the sum of Three Hundred Dollars on account of Willie Johnson. I wish my Compass and chains and surveying instruments to be given to my sons Hugh and Jno. equally between them. In witness whereof I do to this my will set my hand. This the ninth day of December One Thousand Eight Hundred and Eighty

One. Signed and published in our presence and we have subscribed our names hereto in the presence of the Testator. This the 9th day of December, 1881.

W. C. Maloney

Samuel O. Ayres
R. M. Easterly.

It is my will that my son John A. Maloney have the Home Place at Eleven Thousand Dollars instead of Twelve Thousand Dollars and also that he have the Black Mule. It is my wish that whoever gets the "Middle Place" have from the End of the fence to the top of the Ridge and along the top of the ridge to the end of the twenty-five poles of H. D. Maloney corner from the big road. I wish my half of the Bewley Farm to go with H. D. Maloney's half, and if he wishes to buy it, he is to have five years with interest from 1st Jan. 1883 in which to pay for it. I wish my wife to have all my Books.

Signed and published in our presence and we have subscribed our names in the presence of the Testator this the twentieth day of December 1881.

W. C. Maloney

J. H. Coulter
R. M. Easterly.

I desire to change so much of my will as relates to the "Middle Place". I desire this and the Hale Place as described in my Will to go to my Daughter Nannie Herring and the heirs of her body and if she should die leaving no children It is my Will that the land so bequeathed to her shall be divided equally among my surviving children.

W. C. Maloney

R. M. Easterly.
Samuel O. Ayres.